CENTRAL MISSOURI OIL COMPANY, A CORPORATION, ET AL., APPELLANTS v. CITY OF ST. JAMES, MISSOURI, RESPONDENT.—111 S. W. (2d) 215.

Springfield Court of Appeals. December 7, 1937.

144

*E. W. Allison* for appellants.

*Ivan L. Rinehart* and *Breuer & Northern* for respondent.

FULBRIGHT, J.—This is an action in equity to test the validity and reasonableness of a city ordinance extending the limits of the City of St. James, a municipality of the fourth class. Plaintiffs' petition was filed in the circuit court of Phelps county, returnable to the September, 1935, term thereof. Defendant filed its answer, and thereafter at said term of court the venue in said cause was changed to Howell county. On the 10th day of February, 1936, in said Howell county circuit court the cause was tried by the court, and at the close of all the evidence and after argument of counsel, the court took the cause under advisement until the next regular June term, 1936, of said court. On the 17th day of June, 1936, defendant filed its first amended answer, and on the 25th day of June, 1936, and during the regular term of court aforesaid, the court made its written finding of fact and its separate conclusions of law in said cause, and judgment was made in accordance therewith in favor of defendant and against the plaintiffs. Thereupon plaintiffs filed a motion for a new trial which was overruled, and an appeal was duly taken to this court.

For convenience, we shall refer to appellants as plaintiffs, and to respondent as defendant.

The petition states, in substance, that the Central Missouri Oil Company, one of the plaintiffs, is a corporation; that the defendant, City of St. James, is a city of the fourth class; and that by ordinance No. 108, passed and approved July 1, 1935, said city ordered the limits thereof extended. The petition set out, *verbatim,* the description of the outbounding lines proposed in said ordinance, and the proposition was submitted to the qualified voters at a

special election July 23, 1935. The result of the election in favor of extension of the corporate limits of defendant was declared in ordinance No. 109 passed and approved August 5, 1935, and in which ordinance the description of the outbounding lines was set out in full. Plaintiffs further state that each of them owns real estate within the proposed extension which consists of approximately fifty acres; specifically deny every reasonable and proper ground for extending the city limits, maintaining that whatever value. the real estate of plaintiffs possesses is for grazing and/or gardening purposes, or as the location for country homes, or for filling station and restaurant and tourist cabin business by virtue of the fact that same is located on U. S. Highway No. 66, a paved and state maintained highway. Plaintiffs plead that they would receive no benefits by the extension that they do not already enjoy; that electric light and power service is extended by a private corporation; that such residents as have the use of water supplied by the municipal water plant have at their own expense laid, built and constructed their own private water lines to connect with the water mains of said city; that the sole purpose for annexing the territory set out in the petition was, and is, to subject the real estate and the residents thereof to city taxation, and that no possible benefits can inure to plaintiffs or others similarly situated. Plaintiffs state that ordinances Nos. 108 and 109 attempting to extend the limits of the City of St. James are unconscionable, oppressive, unreasonable and unjust; that the officers and agents of the city are demanding payment of municipal license fees upon businesses of certain plaintiffs and upon the owners of vehicles residing on the annexed territory, and are threatening prosecution for failure to pay same; that city taxes on real estate in the annexed territory have been levied and assessed; that the city will attempt to collect such taxes; that said levy and assessment constitute a cloud on said real estate; and that the City of St. James is exercising acts of municipal authority under and by virtue of the ordinances aforesaid, which authority is unauthorized and without foundation in law. Plaintiffs state that they have no adequate remedy at law; that ordinance No. 109 is void; and pray the court for relief.

Defendant, in its answer, admits the following: That it is a corporation; the passage of ordinances Nos. 108 and 109; that it is exercising corporate jurisdiction over the new limits as extended, and that it has undertaken and will undertake to levy and collect taxes; but denies generally the other allegations in plaintiffs' petition.

Ordinance No. 108, the purpose of which was the extension of the boundary lines of the city, was passed and approved July 1, 1935. The description in this ordinance has an omission of one of the sides of the ball park. The proposition to extend the limits of the city

was voted upon and the extension approved, the vote being 273 for and 116 against. Ordinance No. 109 was then passed declaring the result of the election, and in addition, undertook to restate the new city limits as provided for in ordinance No. 108. Ordinance No. 109 clearly described the line around the ball park, but omitted a portion of the description of the extension line on the west side.

It is observed from plaintiffs' exhibit No. 9, purporting to be a map of St. James, that the new territory proposed to be taken in by ordinance No. 108 is in three separate and distinct parcels. The parcel extending in an easterly direction includes a portion of what is known as Lynna Heights. This territory is defined by a line beginning at Pace's Second Addition on Jefferson Street and running in an easterly direction with a sufficient jog to take in the city sewage plant to a point approximately two blocks in the platted district known as Lynna Heights, east of the Red Bird road, thence south to the right-of-way of the Frisco railroad, thence westerly along said right-of-way to the Red Bird road, then still west with the Frisco railroad right-of-way to the center line of Section 20, thence south across the railroad to the center of Section 20, returning to the old city limits line.

The next parcel to be described as part of the annexed territory is the ball park, and in attempting to surround the ball park, as disclosed by ordinance No. 108, the call covering the east side was omitted. The ball park abuts the old city limits line, the description of the ball park in the said ordinance being as follows: "Thence east 500.00 feet along north side of Ball Park to pin; thence West 398.0 feet along South side of Ball Park to pin; thence N. 29 degrees 10 minutes W. 200.5 feet to pin (which is 365.0 feet South of N. W. Corner of Ball Park); then South on old City limits line."

The territory to the west included in the extension is defined by a line which begins at a point on the old city limits line, a short distance from Aida Street, surrounds the territory intended to be included, and finds its way back to the old city limits on Prairie Street.

Exhibit No. 9 shows that the survey for the proposition to extend the city limits begins on Jefferson Street which borders what is designated Pace's Second Addition on the west. There is no record of an ordinance making Pace's Second Addition a part of the city, and no record evidence to that effect. Oral testimony tended to show that said addition was taken into the city in 1908 by ordinance No. 65, and that the proper legal steps were taken in submitting the proposition to the people.

After the plaintiffs attempted to prove that Pace's Second Addition is not legally a part of the city of St. James, and after parol evidence was admitted to dispute the allegations and proof of plaintiffs, in regard thereto, the defendant filed an amended answer to conform to the proof; alleging that the territory intended to be

annexed is contiguous to the limits of the city as extended; that the point of beginning in extension ordinance No. 108 was on the east line of Pace's Second Addition; that said addition is within the corporate limits of St. James; said city having exercised full municipal control over same for more than twenty-five years; that no inhabitant of said addition is a party to this suit; and that the inhabitants of said addition participate in city activities and affairs, pay city taxes, claim to be within the limits of said city; and that all persons are now estopped to deny that they are within the corporate limits of said city and that said Pace's Second Addition is a part of the corporate territory of said city.

Among other things, the trial court found that the description of the outbounding lines of the proposed new city limits extension as set out in ordinance No. 108, and the territory to be included therein, begins on, and is adjacent and contiguous to, the then city limits; that Pace's Second Addition to the city of St. James extends up to Jefferson Street, adjacent and contiguous to the point of beginning of the new proposed territory; that all of the territory proposed to be taken in by the extension at issue is adjacent and contiguous to the old city limits, and that such extension is not unreasonable; that although there is a manifest omission in the description of the new line, as it passes around the ball park, as shown in ordinance No. 108, yet, there is sufficient data from which the omission can be easily supplied and the description thereby rendered certain; and that the description, as contained in ordinance No. 109, which undertook to restate the new limits, is superfluous and unnecessary, and that the error was harmless. These are the matters of fact and points of law as found by the trial court at which plaintiffs level their criticisms, and which they embody in ten assignments of error. Because of their kindred nature, and for the purpose of our consideration, we group these assignments under two heads: First, The validity of the ordinances; Second, The reasonableness thereof.

As this is an equitable proceeding in which we are required to review the entire record, the judgment will not be reversed on the ground that the court erred in excluding or in admitting evidence, and as the evidence which was excluded is nevertheless before us, we shall render the judgment which we think the pleadings and evidence warrant. [Cunningham v. Kinnerk, 74 S. W. (2d) 1107; Cunningham v. Kinnerk, 1 S. W. (2d) 241, and cases cited therein.] This cause was taken under advisement, and, at a subsequent term, the court rendered judgment. Ample time was had in which to study and consider the issues joined, and the trial court had the advantage of this court in that the witnesses were seen and heard. Although cases such as the one at bar are tried *de novo* by us, and it is proper to consider the weight of the evidence, this court will usually defer to the findings of the trial judge on disputed

questions of fact, and especially so when the evidence is close. [Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118; McKinney v. Hutson, 81 S. W. (2d) 951, and cases therein cited.] With these controlling principles in mind, we shall proceed with the determination of this case.

The first proposition to command our attention is plaintiffs' contention that the line defining the annexed territory does not begin on the outbounding line of the old city limits; that said Pace's Second Addition is not a part of the city of St. James. An effort was made in the trial court by defendant to show by parol testimony that Pace's Second Addition was taken in as a part of the city of St. James in 1908, and that the minute book and record and extension ordinance by which said territory was taken in have been lost or destroyed and could not be produced, and further attempted to prove the contents of said record and extension ordinance. The evidence discloses that Pace's Second Addition is laid off in lots and blocks on the city plat, and that for more than twenty-five years the city of St. James has exercised jurisdiction and control over said territory; levied and collected taxes; constructed streets; laid water lines and furnished water and sewage service to the inhabitants thereof; and that the citizens of said territory during said period of time have voted in city elections, paid city taxes, and engaged in all activities of the city of St. James as a part thereof.

It was held in the case of State ex rel. Brown v. Town of Westport, 116 Mo. 582, 22 S. W. 888, that quo warranto proceedings would not lie on the part of the State to deprive a city and its officers of their franchise because of irregularity in its organization after a lapse of twelve years, and that the State in such cases is estopped on the ground of laches. In the case of City of Salem ex rel. William Roney v. Young, 142 Mo. App. 160, 125 S. W. 857, it is stated: "Public policy requires that municipal governments should be stable existing civil institutions and should not be easily destroyed. This maxim applies in all its force to the extension of city boundaries as well as to the original incorporation of the city."

It is our conclusion that since St. James has exercised jurisdiction over Pace's Second Addition for a long period of time, and the inhabitants have acquiesced in, and recognized the existence of such municipality and extension thereof, that such extended territory has become a de facto part of the corporation; and this conclusion is reached notwithstanding the fact that the record does not disclose that an ordinance was passed extending the city limits so as to include Pace's Second Addition, or any of the necessary steps required by the statute. Furthermore, the authority of the city in such territory cannot be challenged collaterally, but must be done by direct proceedings by quo warranto, which action would not lie at this time because of laches. Upon the facts adduced, and under

the law, we conclude that Pace's Second Addition is a part of the city of St. James.

The next point to be determined is whether or not there is sufficient data from which the omission in the description of the new line as it passes around the ball park, as shown in ordinance No. 108, can be supplied and the description thereby rendered certain. The ball park is the second parcel which was described in the extension ordinance, and the description has heretofore been set out which shows clearly the omission of the line running from the eastern terminus of the line on the north side of the ball park to the beginning of the line running west on the south side of the ball park; the call omitted being, "thence south 551.0 feet along east side of ball park to pin." E. E. Decker, County Surveyor of Phelps County for more than three years and a graduate of the Missouri School of Mines where he took surveying in his course of study, and who has had practical experience as a surveyor for a number of years, testified that as a surveyor he could determine the territory included in the park from the description as given in the ordinance. This ball park parcel begins on the old city limits line, surrounds the park (except for the omission) and goes back to the old city limits line. It is entirely separate and distinct from the eastern and western extensions, and is owned by the city of St. James.

We think it is obvious that it was the intention to surround the ball park. Three sides are accurately described, all the corners defined and located, and it seems to us that a person of common understanding can readily supply the omitted line. The same rule applies with reference to descriptions in extension proceedings as applies in descriptions in deeds. Our Supreme Court, in the case of Deal v. Cooper, 94 Mo. 62, 6 S. W. 707, said: "When the deed, applied to the subject-matter, shows a manifest omission in the description, and there is sufficient data furnished by the deed to supply the omission, the omission will be supplied by construction." To say that the description of the ball park is not fatally defective, and to adjudge it as a part of the extension, we simply remove a difficulty arising from the defective description and call in the aid of extrinsic evidence to apply the description and intention as collected from the description itself. This is not invoking such evidence to incorporate an intention not apparent on the face of the ordinance. We believe the trial court committed no error when it decided that the description as it appears in the ordinance is sufficient to identify the so-called ball park as being included in the new limits. [Means v. De La Vergne, 50 Mo. 343; Woods ex rel. Rogers v. Henry et al., 55 Mo. 560; Coe v. Ritter, 86 Mo. 277; Hammond et al. v. Johnston, 93 Mo. 198, 6 S. W. 83; Bollinger County

v. McDowell, 99 Mo. 632, 13 S. W. 100; Blumenthal Real Estate & Investment Co. v. Broch, 126 Mo. 676, 29 S. W. 836.]

In attempting to prove that the extension ordinance is unreasonable, inequitable, and unjust, plaintiff offered testimony tending to show that the property in the annexed territory would be decreased in value by virtue of being taken into the city; that the property owners therein would be burdened with additional taxes and licenses without receiving any benefits. Numerous photographs were offered to show that the territory included in the extension is not densely settled and is farm land. One of the photographs shows cattle in a pasture, another shows hay stacks in a field, and all of the photographs tend to show that the territory is practically uninhabited. However, a witness, in identifying the photographs, testified that they do not show the buildings. Plaintiffs offered testimony to show that the greater portion of the territory is fit only for agricultural and horticultural purposes; that the extension includes part of an orchard, sportsmen hunt quail on part of the land; that part of it is used as pasture; that plats showing a portion of the annexed territory as being laid off in lots and blocks are merely on paper. They offered testimony that the business houses in the annexed territory are practically all located on highway 66, and that the chief value to the property has resulted from the construction of highway 66. Evidence was offered to show that the territory included in the extension is not needed for city purposes; that it is suitable for filling stations and country homes; that the filling stations, some with cabins and restaurants in connection therewith, were all built after the construction of highway 66 and that the proximity of the city of St. James had little to do with the construction of these business places; that plaintiffs and other occupants of the included territory have no municipal services as a result of the extension that they did not already enjoy; that the value of all property taken into the city by the extension would decrease; and that the extension is solely for the purpose of bringing in additional revenue in the way of licenses and taxes.

Defendant offered testimony to show that several filling stations, one of which handles intoxicating liquors, a number of dwellings, tourists cabins, restaurants, a garage, and a hotel are located in the extended territory. There is evidence that the citizens of the city of St. James patronize these places of business. It is further shown that the St. James Chamber of Commerce and other clubs frequently meet at the Atlasta Hotel, which hotel is the only bus station near St. James at which all the busses serving the city stop. It is also shown that the city of St. James, at least to some extent, has in the past policed the territory, and does now. A portion of the eastern extension is laid off in lots and blocks, and the greater portion of the western parcel is platted and laid out for city pur-

poses. W. H. Powell, a former Mayor of St. James, testified that he owned a tract of eighteen acres in this western extension; that three blocks of it is laid out in lots; that the streets are graded and the property has several hundred shade trees planted on it; that the area actually laid out in lots and blocks in the extension comprises approximately twelve acres and that he owns six more acres west of that not laid off in lots and blocks which is suitable for farming purposes. Part of this land has been advertised as a suitable hotel site and the western extension is more suitable for building purposes than for farming purposes. Some of the territory in the extension was bought and is being held for the purpose of speculation, and there was evidence to show that the land included in the extension is too valuable for farming purposes; that it is adaptable for city purposes and has increased in value by reason of being taken into the city. It is further shown that occupants who desire to be, are supplied with light and power by a private corporation that furnishes such services to the city of St. James; and that the occupants of said territory who have water service have constructed lines at their own expense and water is supplied by the municipal water plant. The record discloses that almost immediately after the ordinance declaring the result of the election was passed, this suit was filed and defendant has had no opportunity to extend additional municipal services.

Section 6947, Revised Statutes of Missouri, 1929, Mo. St. Ann. page 5714, providing for the extension of the limits of cities of the fourth class, gives an extraordinary latitude of discretion as to the manner in which this shall be done. The mayor and board of aldermen may, with the consent of the legal voters of the city, "extend or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city." As a rule, this discretion will not be interfered with by the courts unless it has clearly been abused, and if the reasonableness of an ordinance is doubtful, the doubt should be resolved in favor of the ordinance. [State ex rel. Musser v. Birch et al., 186 Mo. 205, 85 S. W. 361; Algonquin Golf Club et al. v. City of Glendale, 81 S. W. (2d) 354, and cases cited therein.]

The case of Vestal v. Little Rock, 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778, is quoted in State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S. W. 1007, as setting out the correct rule in respect to annexation, as follows:

"That the city limits may reasonably and properly be extended so as to take in contiguous lands (1) when they are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market, and sold as town property when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community,

or represent the actual growth of the town beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective town uses."

It will be observed that in the trial of this cause in the circuit court, the formula above quoted was not closely followed. The reasons for extending the limits of the city of St. James are vague, indefinite, and not readily discoverable from the record. But as was said in the case of Hislop et al. v. City of Joplin, 157 S. W. 625, "These questions were proper ones for consideration by the council, and it will be presumed to have passed upon them in reaching its conclusion to submit the proposed extension to the voters and will be presumed to have concluded on the existing facts that for one or more of the reasons enumerated the lands within the proposed extension might lawfully be added to the city. It is presumed that the council acted reasonably. In view of these considerations, the trial court could not well hold that the council acted *unreasonably* until evidence of the facts and conditions were adduced which disclosed that the council attempted to include lands which it had no lawful right to include. The mere possibility of unreasonable action is not sufficient answer to the presumptions mentioned. The burden was upon plaintiffs to show a lack of lawful reason to support the council's action before the extension could be held invalid." [Copeland v. St. Joseph, 126 Mo. 417, 29 S. W. 281; St. Louis v. Theater Co., 202 Mo. 690, 100 S. W. 627.]

It has been held that even though a portion of the annexed territory is used solely for the purpose of agriculture and horticulture, as is insisted by plaintiffs in this case, the taking of such lands is not unreasonable and would not sustain a writ of ouster even in direct proceeding by *quo warranto*. [State ex rel. Musser v. Birch et al., supra; State ex inf. v. Fleming, 158 Mo. 558, 59 S. W. 118.] Even if the mayor and board of aldermen expected additional revenue, and this was one of the motives in promoting the extension, such fact would not militate against the reasonableness of the ordinance, as additional revenue would logically follow an extension. [Algonquin Golf Club et al. v. City of Glendale, supra.] Part of the annexed territory is platted; part is held for sale as town property; part has flourishing business establishments, residences, cabins, and filling stations, although the community is not densely settled; and there is more evidence that the lands included are valuable on account of their adaptability for prospective town uses than to the contrary. The ordinance extending the limits of the city of St. James was passed by the board of aldermen, ap-

proved by the mayor, and the qualified voters of the city voted in favor of the annexation. This creates a prima facie case in favor of the reasonableness of the ordinance. There are no facts in evidence or conditions adduced which disclose that the council attempted to include lands which it had no lawful right to include. Therefore we hold that the annexation of the territory described in ordinance No. 108 is reasonable and within the law. [State ex inf. Mallett v. City of Joplin, 52 S. W. (2d) 602; Stoltman v. City of Clayton, 205 Mo. App. 568, 226 S. W. 315; City of St. Louis v. United Railways, 263 Mo. 387, 174 S. W. 78; Hislop et al. v. City of Joplin, supra.]

The last point to be considered is whether or not the description, as contained in ordinance No. 109, is superfluous and unnecessary After an extension ordinance has been regularly passed, all that is necessary is for the council to count the votes and declare the result by appropriate minutes and records. This was done, and the record introduced in evidence. In the case of State ex rel. Brown v. Town of Westport, supra, it was held that but one ordinance was necessary, and we will so hold in this case.

The proposed territory to be annexed being contiguous to the old city limits line; the omission in the description of ordinance 108 not being fatal; the defective description in ordinance No. 109 being harmless; and the plaintiffs having failed to sustain the burden imposed upon them of showing that the extension is unreasonable, we have come to the conclusion that the judgment of the circuit court should be affirmed. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.