FRED ROGERS, ET AL., APPELLANTS, v. CITY OF DEEPWATER, A MUNICIPAL CORPORATION, RESPONDENT.—219 S. W. 2d 750.

Kansas City Court of Appeals. Opinion delivered April. 4, 1949.

796

*Haysler A. Poague, Barkley M. Brock* and *Fred F. Wesner* for appellants.

*Houtchens & Francisco, Delton L. Houtchens and Taylor L. Francisco* for respondent.

BLAND, J.—This is a suit in which an injunction is prayed by the owners of land comprising a tract taken into the City of Deepwater, by its extension Ordinance Number Seven which was passed by the Board of Aldermen of the City on June 16, 1947. An election was had which resulted in 117 votes for and 73 against the extension. The extension was then declared by the Mayor's Proclamation as provided by law. The regularity of the proceedings relative to the extension was never attacked.

Plaintiffs in their petition for an injunction state that the City is claiming jurisdiction over the land taken in and is about to levy and collect taxes and merchant licenses, etc., and that the City should be enjoined from so doing for the reason that said Extension Ordinance is unreasonable, oppressive, unconstitutional, unjust and a fraud upon the residents of the extended area for numerously alleged reasons, chief of which are that the extended area is agricultural land

and that the City does not and cannot furnish any benefits to the plaintiffs.

The land in the extension is enclosed by a line which begins on the west side of Highway 13 at the west end of G Street. It then runs west for a distance of 500 feet, thence north along the west side of the City of Deepwater and along the west side of Highway 13 to a point 478 feet north of the old City limits. It then runs east to a point 478 feet north of the northeast corner of the old City limits. The entire area of the City of Deepwater amounted to 265 acres before the extension. The extension contains approximately 77 acres, 33.23 acres on the west side of Highway 13 and 37.74 acres on the north side of a township road known as Grove Street. On the west side, the old City limits is divided from the new area by Highway 13, a paved State Highway, running north and south. On the north side the old City limits is divided from the new area by a township, or Grove Street, which runs the entire length of the City east and west.

In 1900 the population of the City of Deepwater was 1201, in 1910, 1398, in 1920, 1391, and in 1940 it was 956. On September 1, 1947 the population was 823. The assessed valuation of real property in Deepwater, as shown in the office of the County Clerk, decreased in value from 1938 when it was $158,800 to $145,600 in 1947. There are 78 vacant lots in the old City of Deepwater with a total area of 65 acres. There have been 47 houses burned in the City within the last 20 years and none of these have been rebuilt. Three new houses have been built in the City in the last 20 years. There is no demand for city lots in the old City limits, nor has there been for 35 years. There have been two city lots sold each for $25. No new business building has been built within the last 25 years, although 10 or 12 business buildings have burned down within that period. Every building in the business area is 35 or 40 years old and there are some vacant buildings. Several witnesses testified that 20 to 25 years ago there was a great deal more business activity in Deepwater than there is at the present time; that many businesses in the City that existed 20 to 25 years ago have failed and have never been replaced; that the City has no furniture store, plumber, garage, jeweler, laundry, cleaning establishment or any other such type of business; that 20 to 25 years ago the merchants carried two or three times as much merchandise as they do today and there is no comparison between the amount of business carried on by the merchants today and 20 years ago. However, the Mayor of the City testified that business was about the same in the City as it was 20 years ago. The City of Deepwater, to a large extent, depends upon a tile factory where many of its citizens are employed. The tile factory is not in operation at all times. It was closed down during the war and it was closed at times during the depression era.

None of the City streets is paved, and the City has no equipment with which to maintain its streets. The City has no street committee. In 1946 the City spent $800 for grading the streets. This was the first grading in a long time. The City is indebted in the amount of $4000 for Water Redemption Bonds and $24,000 for Sewer Redemption Bonds. On February 4, 1948 the City had a total cash on hand of $12,369.35. At the time of the election, concerning the extension, the City had between $9,000 and $9,500 on hand.

The City owns its own water and sewer systems. Its water mains are approximately one block south of the old north City limits and two blocks east of the west City limits before the extension except for one point where the main runs along the west City limits for a distance of two blocks. There are fire plugs located along the water mains. Two persons living in the north part of the extended area have city water and three on the west part have water.

The City does not own its own light plant but has granted a ten year franchise to the Missouri Public Service Company. A one cent per kilowatt reduction in the electric rate was secured when the last franchise was granted. Three people living in the north part of the extension have electricity, and eight on the west side. The present street lights are located one block from the property line of the residents in the area covered by the extension. There has been no house built in the area covered by the extension in the last 20 years. The present improvements in the area covered by the north part of the extension include several houses that have been there for the last 40 or 50 years. No new house has been built within that period of time. On the west side there are 11 houses and four business places, most of which were built many years ago. Defendant's witnesses admitted that the buildings on the west side of the highway and located on the paved part of the highway were more valuable than the properties located on the unpaved part of the highway; that the fact that the buildings located on the west side were on a paved state highway added to their value and that these properties were more valuable located on the paved highway than they would be if they were located in the City where the streets are unpaved. The property owners testified that the inclusion of their property in the City would decrease its value. Many of them said that they bought their property because it was located outside of the City limits.

Part of the residents in the extended area live in the same school district as covers the City of Deepwater. The City School house is located one block east of the highway. A number of children living in the extended territory who attend this school would have to cross the highway in going to and from it.

There was evidence that some of the houses located on the west side of Highway 13 in the extended area had outside toilets and that two of these were not healthy; that there were outside toilets in the

City of Deepwater and that only 60 out of 312 houses in the City were modern. The City does not maintain any health department. The City has a fire department with one paid employee and the others are vounteer. The evidence is in dispute as to whether the fire equipment is in good condition. It was admitted that the closest point of each of the various tracts in the extension was within 800 feet of the City fire plugs and that the City had 800 feet of fire hose. There is no evidence that the fire department ever attended a fire in the extended district.

The evidence shows that on the north side the City sewer is one block south of the old City limits except for one place where it runs along the north side of the City limits for a distance of one block and at the north end of 7th Street it runs north to the north line. On the west side it is one block to the east of the old City limits. It was admitted that from the nearest point of each property in the extension area it was not over 600 feet to the nearest sewer and in some places not over 350 feet. Some of the properties in the extended area are so low that they cannot be served by the sewer were it extended.

The police force consists of one paid officer, who is the same person as the fire chief, and occasionally special officers are employed. No police protection has ever been given to any one living in the extended area, except on three occasions the City Marshal has gone to the beer tavern operated by Brubeck on the Settle property situated on Highway 13. There was evidence that there were drunks around the beer tavern. There was evidence that the speed of motorists on Highway 13 is as high as 75 miles per hour. The speed limit in the City is 20 miles per hour. The east half of the highway is located in the City limits and witnesses for the defendant stated that the extension of the City limits was necessary in order to control the speed on the highway. No attempt has ever been made to control the speed on that part of the highway which is now located in the old City limits. There has been no accident along Highway 13.

There was evidence that by reason of the extension the property located in the extended area was subject to a lower rate of fire insurance than it had been before the extension.

Beginning at the northeast corner of the extended area and going west along the north side of the township road to the west line of the extended area, then south along the west side of the City to the south line of the extended area, the various tracts of land and improvements thereon are described as follows in the evidence:

L. J. Ahrendt owns a tract at the northeast corner of the City containing 28 acres in all. 10.36 acres of the 28 are included in the extended area. 700 feet of this tract fronts on the township road. All of this land is used for pasture and livestock. There was evidence that the land is not suitable for City lots because it is overflow land and is cut by a wide ditch. However, the tract taken in can be

developed as it has access to the City sewer, water and City street lights.

S. D. Lloyd owns the next tract which is 210 x 315 feet deep and contains 1.65 acres. All of his tract is in the extended area. Mr. Lloyd works at digging coal, farming and common labor. He has a horse, plow and garden tools. He grows corn and fruit. His property is used for a residence and it is connected with and using City water. It is also connected with the City sewer and near to the City street lights.

Peter Arnold owns one acre 198 x 315 feet. Arnold lives in Kansas City and spends his weekends at the property. The City sewer runs 40 feet from his house. He has access to City water and is near to the City street lights.

H. Hart owns a 2 acre tract 208 x 416 feet deep. He is a farmer, keeps chickens and does truck gardening. While he claims to be a farmer he has only a few chickens and raises some sweet corn. He lived in Deepwater until a year ago. He has not farmed for four years and not since he lived in Osceola. His home is connected with and using the City sewer, has access to City water and is near the City street lights.

Mr. Hughes owns an acre and a half 450 x 150 feet deep. This property is unimproved and is used entirely for cow pasture. The property has access to City water, sewer and is near the City street lights.

Nettie Wittig has a 28 acre tract. Eleven acres of the 28 are in the extended area. 600 feet of the farm fronts on the township road and it extends behind the Hughes tract. The entire income of Mrs. Wittig and her father is from farming and constitutes raising chickens, cows, gardening and field crops. The eleven acres in the extended area are generally rented out and has corn grown on it. The home is not in the extended area but it has access to City water, sewer and is near the City street lights.

T. E. Gillispie owns a 73 acre farm and the improvements thereon, including house, barn and other outbuildings. He has no income except from farming. He keeps cattle, hogs, chickens and raises field crops. His home is in the extended area but the farm, as a whole, is further back from the three acres which is included in the extended area. The home has access to City water, sewer and is near the City street lights.

Jess Branstetter owns 16 acres. He has 525 foot frontage on the Township Road. Approximately 6 acres are located in the extended area which includes the house, barn, hog house, etc. The land is used entirely for pasture and cows. Mr. Branstetter is a laborer and does no farming. He uses the City streets in going to and from his work every day and to the post office to get his mail. His home is modern

and it is connected with and using City water. He has access to the City sewer and is near the City street lights.

L. J. Ahrendt owns a second tract containing 19 acres. Approximately 7 acres of this tract are included in the extended area with improvements located outside of the area. Ahrendt is a farmer and all of his income is derived from farming. He keeps a number of livestock and raises crops on the farm. The property has access to the City water, sewer and is near the City street lights.

Frank Johnson owns 73 acres which, for the most part, is used for pasture and livestock. He normally raises 100 head of cattle a year. The house where he lives is just west of the extended area and is not included therein. He owns approximately 5 acres in the extended area and also a small tract 180 x 100 feet deep containing .40 acres upon which is located a garage and a Chrysler-Plymouth Agency. This agency is operated by Mr. Johnson and he owns the entire Chrysler Agency for Henry County. He has access to City water, sewer and is near the City street lights.

J. N. Govers owns a filling station and grocery store which is rented to Carlton Foster. This small tract is 133 x 188 feet and contains .57 acres. It is used entirely for the grocery store and filling station business. The property has access to City water, sewer and is near City street lights.

Joe Bischel owns a house and lot 60 x 208 feet and containing .30 acres, which property is used entirely as a residence. Mr. Bischel operates a garage business up the street. The property has access to City water, City sewer and is near the City street lights.

Ralph Vickers owns a 3.80 acre tract fronting 200 feet on Highway 13. Two acres of this tract are located in the extended area. On this land is located a house and a small building where paint and paper is stored. Vickers uses the tract for gardening and keeps some small animals for his own use. He raises fruit and uses the 4 acres for agricultural purposes. He has some income from paperhanging and painting.

Floyd Payne owns a 91 acre farm. 8½ acres of this land fronts on the highway and this is in the extended area. This is vacant land and has a potential value for building sites. The only use now made of it is a cow pasture. The house and the improvements are not in the extended area. The tract has access to City water, sewer and is near the City street lights.

R. V. Settles owns a tract 150 x 100 feet and containing .34 acres. He lives in Deepwater and operates a grocery store, filling station, ice house and bus stop in the building located on the premises. He also owns a beer tavern in the same building, which is operated by Jess Brubeck. Between the grocery store and the filling station there is a bus station. The sign on the bus station says "Deepwater". Settles owns the ice house and uses the City streets every day for

803

business uses. The bus station for the City of Deepwater is located on the premises and 14 busses a day take on and discharge passengers at this point. The property is connected with and using City water, has access to the City sewer and is near the City street lights. This being a business building with several different concerns occupying it there is a heavy usage of City water.

Joe Bischel owns a garage 50 x 100 feet containing .14 acres. Mr. Bischel is a mechanic and the property is used for business purposes. The business has access to City water, sewer and is near the City street lights.

William Killman owns a 4 acre tract with no improvements except a barn and a hen house. Three acres of this tract are in the extended area and it has a 255 foot frontage on Highway 13. While Killman claims to use this as a chicken ranch he has only 50 chickens. The tract is valuable as a potential business site and William Smith offered him $500 for it but Killman refused to go through with the deal after accepting the offer. The tract has access to City water, sewer and is near the City street lights.

J. L. Byrd owns one and a half acres in the extended area with 120 feet frontage on Highway 13. He keeps a few chickens and usually keeps a cow. He works at the Clay Company in the City and uses the City streets every day. His property has access to City water, City sewer and is near the City street lights.

Rolla Sanders owns a one acre tract with a frontage of 120 feet on Highway 13 by 325 feet deep. He has one cow, chickens and usually keeps hogs. He works at the brick plant and uses the City streets every day in going to and from his work. His property has access to City water, City sewer and is near the City street lights.

H. H. Wirsig owns a one acre tract 120 x 325 feet. He works part time as an insurance saleman. His property has access to City water, sewer and is near the City street lights.

Albert Clark owns a one-half acre tract with a 75 foot frontage on Highway 13 running 325 feet to the rear. He does not live in the house but it is rented. The property has access to City water, sewer and is near the street lights.

Maude Wilson owns one acre with 150 feet fronting on Highway 13 by 325 feet deep. The place is used as a residence, for gardening and for a few chickens. The home on the tract is rented to her son who works at the tile works in the City. He uses the City streets every day in going to and from his work. Her son has a child going to the City School. The property has access to City water, City sewer and is near the City street lights.

Lottie Simmons owns a 10 acre tract directly west of the last 4 tracts mentioned. Two acres of this 10 acre tract are included in the extended area. There are no improvements on this 10 acre tract except a barn and the land is used for pasturing cows.

Robert Wilson owns 2 acres, 200 feet on the Highway by 325 feet deep. He is employed in the City of Clinton. The property is used as a residence and the keeping of a few chickens. The residence is modern and cost $5000. The property is connected with the City water system and using the City water. Wilson has access to the City sewer but has a septic tank for his own use. The property has the same access to the City street lights as others along the Highway.

J. C. Dehn owns one and 5/8 acres, 125 feet on Highway 13 by 325 feet deep. Dehn is retired except for a few auction sales. He normally keeps a few chickens and cows but had none at the time of the trial. The property is connected with and using City water. He has access to the City sewer but has his own septic tank. He is near the City street lights. One of the witnesses for the defendant described this house as "A well built house, late bungalow type, and it is one of the nicest I think, in Deepwater, or along the Highway".

Directly west of the property of Robert Wilson and J. C. Dehn are three small tracts. Mr. Abnot owns approximately 1/3 of an acre. Mr. Phelps 1/4 of an acre and Mr. Holiday 1/4 of an acre. These tracts are all unimproved.

Lena Curtis owns three acres, 295 feet on the Highway and running back 325 feet. She has access to the same City utilities as does Roy Williamson, her neighbor.

Roy Williamson owns three acres of land located in the extended area. He normally keeps three head of cattle and one or two hogs and chickens. The tract is subdivided. Williamson is a carpenter and lives in his home located on this tract. The house has electricity, City water is available, also, the City sewer. He is near the City street lights.

Fred Rogers owns 20 acres. It was unimproved until he purchased the place recently and moved a house and barn on it. Approximately 6 acres are included in the extended area. Rogers is employed at the Clay Company located in the old City limits. He uses the City streets every day in going to and from his work. City water is available. He has access to the City sewer and City street lights are nearby and he has electricity in his home.

On the north the old City limits are divided from the north part of the extended area by a township road or Grove Street, running east and west. The road on the west has been located there for more than 70 years and it has been paved since the time of the First World War. It is maintained by the State of Missouri. The north limits of the old City are divided from the north part of the extension by a township road running east and west. This road is maintained by the township. The City of Deepwater has not maintained any road in the extended area.

There has been no sale made in the extended area for building sites or otherwise except one sale made of a small tract of land for

pasture use. Mr. Ahrendt received an offer to buy a portion of his land for a chicken ranch but the transaction fell through when the land was taken into the City. Mr. Payne received two inquiries relative to the sale of some of his land, but no sale was made. Everett Smith testified that he had tried to buy some land from Messrs. Stewart and Killman. None of the other owners of land had ever received any requests to purchase any of the land for the purpose of building.

The business buildings fronting on the Highway were constructed after the latter was paved. There was evidence that most of the business transacted in these buildings was with farmers and tourists and not with townspeople. The water and sewer systems are owned by the City and the police and fire departments are available to the residents of the extended area.

Of those living in the extended area Dehn, Robert Wilson and Settles own business properties. The Branstetter and Lloyd properties are already attached to and using the City water and the Hart and Lloyd properties are connected with the City sewer. A number of the places have their own septic tanks and are not connected with the City sewer. According to the testimony of Dr. C. R. Townsend, City Health Officer, the septic tanks and outside toilets in the extended area are in poor condition and the sanitary condition in the area would be improved if these residents were required to attach to the City sewer.

The old City limits before the extension were the center of Highway 13, where traffic travels at a rate of speed up to 75 miles per hour. School children use this Highway in going to and from school and it is the desire of the City to slow the traffic down through this part of the town in compliance with many requests for police regulation of traffic, as testified to by the Mayor. The City authorities have been unable to police Highway 13 as the old City limits extended only to the center of the Highway and there is excessive speeding on this road.

A great many drunks congregate around the beer tavern which is on the Settles property and next door to the bus station, and there is need for police protection for traveling members of the public. Drunks are observed falling around in this area. According to the testimony of the Mayor drunks are noticeable in this area. Arguments and fights occur in the beer parlor. The City Marshal on three recent occasions was called to the beer parlor to restore order because of the fights and arguments. According to the testimony of the Mayor it is the desire of the City to police this area.

The City Fire Department has 800 feet of serviceable fire hose. Any resident in the extended area can be given fire protection according to stipulation dictated by the court, and agreed to by attorneys for both parties to the suit. Because of the fire protection furnished the extended area fire insurance rates have been lowered.

The extended area is a little over ½ mile by 500 feet on the west side, and ½ mile by 478 feet on the north side of Grove Street, which is north of the old City limits. The west side has 10 residential properties and 9 business properties, consisting of the Community Garage, Beer Parlor, Ice House, Grocery Business, Paint and Wallpaper Shop, the Foster Grocery and the Johnson Garage, which is the Chrysler-Plymouth Agency. On the north side are 6 residential properties, or a total of 16 residences and 9 business properties located in the extended area consisting of 77 acres. The Bus Station has a sign denoting the store as "Deepwater."

Defendant's witnesses testified that the property values in the extended area were increased because of the benefits conferred and offered by the City, and that the value of the property as City residences and business property, exceeded any possible agricultural value and that the properties were used for City usages and not agricultural pursuits.

Plaintiffs insist that the court erred in refusing to grant the injunction. Deepwater is a City of the fourth class and is governed by Section 7097 R. S. Mo. 1939, providing that a city of the fourth class may extend the limits of the city by a vote of the majority of the legal voters of the city. It has been held that this provision of the statute does not confer unbridled authority, but calls for the exercise of reasonable judgment and discretion, and there must be some reasonable call or demand for the use of the territory to supply something desirable and necessary for community welfare. (Boals et al. v. Garden City, 50 S. W. (2nd) 179, 181.) However, such ordinances are prima facie valid and where the reasonableness of the ordinance is doubtful, the doubt should be resolved in favor of the ordinance. (Algonquin Golf Club et al. v. City of Glendale, 81 S. W. (2nd) 354; Central Mo. Oil Co. et al. v. City of St. James, 111 S. W. (2nd) 215; The City of Plattsburg v. Riley, 42 Mo. App. 18; Hislop v. Joplin, 250 Mo. 588.)

"The burden of proof, as we have said, is on the party assailing the ordinance as to its unreasonableness. He must clearly establish such unreasonableness. The ordinance is presumed to be reasonable and valid until that presumption is overthrown by evidence. * * *

"The ordinance cannot be upturned by the judiciary for the alleged unreasonableness or fraud except when such is clearly shown to exist. The chancellor was correct, we think, in concluding that the extended limits is the outgrowth or an overgrowth of the City of Kirkwood, really a part of it and depended upon it, using its public service, and valuable because of its proximity to said City, and that the land, all of it, or practically all of it, is adaptable for city purposes. So we rule against appellants on the first proposition." (Winter et al. v. City of Kirkwood, 296 S. W. 232, 234.)

We have examined plaintiffs' authorities and find them not in point. The case of Ozier et al. v. City of Sheldon, recently decided by this Court involved the taking into the city of land largely devoted to agricultural uses, and there were no city advantages offered to the land owners.

The court saw and heard the witnesses and viewed the extended area and was in a better position to judge of their credibility than are we. There was evidence that the property taken in has a value as City property far in excess of any agricultural value. It has been considerably benefited already, and it seems only fair, if these plaintiffs are benefited, that they should share a part of the burdens, although they seem to be resentful over the fact that they are going to be required to pay City taxes.

It is insisted that the court erred in permitting the witnesses Shaffner and Wilson to testify that the land in the extended area had more value because it was located near the City of Deepwater. This evidence was merely cumulative, and there was no material error in permitting the testimony.

The court did not err in excluding plaintiffs' evidence that sixty houses in Deepwater were modern. The court held that this evidence would be proven in rebuttal, but no effort was made to show the facts in rebuttal. The judgment is affirmed. *Dew, J.*, concurs. *Cave, P. J.*, not sitting.