**J. Bob WOODIEL and Blanche Woodiel, Appellants,**

v.

**BARCLAY ENTERPRISES, INC., Respondent.**

No. 18120.

Missouri Court of Appeals, Southern District, Division One.

July 9, 1993.

Application for Rehearing or Transfer to Supreme Court Denied Aug. 2, 1993.

David W. Ransin, Springfield, for appellants.

Paul Hasty, Jr., Robert A. Mintz, Wallace, Saunders, Austin, Brown and Enochs, Chartered, Kansas City, for respondent.

CROW, Presiding Judge.

On the afternoon of November 13, 1990, Blanche Woodiel fell as she exited her 1984 Dodge Ram van while it was being serviced at a Jiffy Lube operated by Defendant, Barclay Enterprises, Inc. She was injured. She and her husband, J. Bob Woodiel, sued Defendant. A three-day jury trial produced a verdict assessing zero percent fault against Defendant and 100 percent fault against Blanche. Judgment was entered per the verdict.

Plaintiffs appeal, assigning error in (1) exclusion of evidence regarding floors at other Jiffy Lube facilities operated by Defendant, and (2) the jury instruction hypothesizing Blanche's fault.

Defendant operates four Jiffy Lube automobile service facilities in Springfield, Missouri. One is on Sunshine Street. The service area at that facility has a concrete floor. In the service area are three bays. In each bay is a pit. When an automobile is to be serviced, it is driven into a bay and stopped above the pit, enabling an attendant in the pit to service the vehicle from below while another attendant services it from above.

Blanche's injury occurred at the Sunshine Street facility. She drove her van into the easternmost bay. The pit in that bay is approximately 18 feet long (north/south) and 38½ inches wide (east/west). Around the perimeter of the pit is a steel "curb." In photographs, the curb appears no wider than an inch. The top of the curb on the east and west sides of the pit is some six inches above floor level. A concrete "platform ramp" abuts the curb on the east side of the pit, extending outward (east). A similar ramp abuts the curb on the west side of the pit. Each ramp is 21 inches wide. The horizontal surface of each ramp is three inches above floor level, but the north and south ends of each ramp slope down to the floor. This enables the tires of a vehicle to ascend the ramps as the vehicle is driven into the bay at the south end of the pit and descend the ramps as the vehicle exits the bay at the north end. The top of the steel curb on the east and west sides of the pit is about three

inches above the horizontal surface of the abutting ramp. The curb and the ramps are painted yellow. The floor is painted gray.

When Blanche drove into the bay, she was guided onto the ramps by Brian Glasgow, an attendant. Glasgow testified the ordinary procedure is to escort the driver from the vehicle into the customer's lounge, where the driver waits while the vehicle is serviced.

When Glasgow approached Blanche's door, she told him she wanted to pick up litter in the van. Consequently, she remained in it while Glasgow began service. After some five minutes, Blanche completed her task and attempted to exit the van. From her testimony, it is inferable her right foot came down on the outer (west) edge of the west ramp, causing her to lose her balance and fall.

Defendant's cross-examination of Blanche contains this exchange:

Q And when you drove into that bay, you felt yourself drive up on that yellow ramp, didn't you?

A Yes.

Q And that ramp is painted bright yellow?

A Yes.

. . . .

Q . . . you knew that you were driving onto something higher than the floor?

A Yes.

. . . .

Q You could also see that it was higher than the rest of the floor?

A Yes.

Plaintiffs' theory of liability was that because of the ramp, the floor was not reasonably safe.[1]

Plaintiffs' first point relied on reads: The trial court erred in . . . [excluding] all of Plaintiffs' evidence, testimony and argument regarding the floor conditions and procedures used at the three other stores owned and operated by Defendant because such matters were directly material, relevant and essential to establishing Plaintiffs' submissions against Defendant that the drop-off on the subject floor was not reasonably safe, that Defendant knew it was not reasonably safe, and that Defendant failed to use ordinary care to remove it, in that:

A. All of Defendant's other stores had flat, single-level floors in the service bays with "curbs" less than six inches tall and identical paint configurations around the pit perimeters, and warnings to customers were not required; the conditions and procedures depicted in the training videotape were very similar to those at the other stores; the drop-off was dangerously difficult to see; the drop-off was not required by any building code; the drop-off was totally unnecessary; and the drop-off could very easily and effectively have been removed;

B. The relevancy of these matters was injected and "opened up" by Defendant's counsel in his opening statement and cross-examinations, and was used unfairly in his closing argument;

C. The trial court should have allowed the expert witness opinions and supporting factual testimony by architect Kent Smith comparing the relative dangers of the drop-off against the safety of the flat floors at all of Defendant's other stores, thereby providing the jury with a proper basis upon which to evaluate the reasonableness of this condition and Defendant's failure to remove it.

Immediately before trial commenced, Defendant filed a motion in limine seeking an order that Plaintiffs' lawyer "be prohibited

---

1. Plaintiffs' verdict-directing instruction read:
 In your verdict you must assess a percentage of fault to defendant if you believe:
 First, there was a three-inch drop-off outside and below the door of plaintiff's van on the floor of defendant's store and as a result the floor was not reasonably safe, and
 Second, defendant knew or by using ordinary care should have known of this condition, and
 Third, defendant failed to use ordinary care to remove it, and
 Fourth, as a direct result of such failure, plaintiff Blanche Woodiel sustained damage.

from making any reference, comment or statement, or from offering any evidence, at any time within the presence and hearing of the jury, as to the condition of the floor at any garage, Jiffy Lube, or other facility other than the location where [Blanche] was allegedly injured." The trial court granted the motion.

■ Granting a motion in limine does not automatically result in permanent exclusion of the disputed evidence. *State v. Evans*, 639 S.W.2d 820, 822[1] (Mo.1982). Such a ruling is interlocutory only, and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence. *Id.*

■ Consequently, subject to a narrow exception inapplicable here, appellate courts will not review a claim that evidence was erroneously excluded unless the party seeking to present it makes a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883[14] (Mo. banc 1985).

■ The statement of facts in Plaintiffs' brief asserts the floors in Defendant's other three Jiffy Lube facilities are different than the floor where Blanche fell, in that the other facilities have "flat, single-level concrete floors painted gray with wide borders of yellow paint surrounding each pit." The brief cites no transcript reference to support this declaration; instead, the brief refers us to Defendant's response to requests for admissions. The brief does not indicate these responses were presented to the trial court in an offer of proof during the trial.

A passage in the argument portion of Plaintiffs' brief states: "... the Court consistently denied Plaintiffs' every effort to present these matters to the jury." Again, no transcript reference is supplied.

Later in the argument in Plaintiffs' brief, we find a reference to a bench conference on the third day of trial where the admissibility of a "training videotape" was debated. We glean from the debate that the tape showed how an attendant is supposed to guide a driver into a bay by hand signals. After the trial court rejected Plain-

tiffs' offer of the tape, Plaintiffs' lawyer directed the trial court's attention to Plaintiffs' Exhibit 2 which, he said, was Defendant's "Battlefield store." Plaintiffs' Exhibit 2—a photograph—accompanies the record here. It appears to show a bay with a pit. A metal curb, similar to the one described earlier in this opinion, encircles the perimeter of the pit in Plaintiffs' Exhibit 2. The floor abutting the curb in Plaintiffs' Exhibit 2 appears to be flat, that is, there is no "platform ramp" along either of the long sides of the pit. Plaintiffs' lawyer told the trial court that Plaintiffs' Exhibit 2 would demonstrate Defendant knew the floor at its Sunshine Street facility was hazardous "because they've got three other locations with flat floors." Defendant objected to the exhibit, and the trial court refused it.

Plaintiffs' theory of admissibility, as we comprehend it, is that because Defendant has no platform ramps alongside the pits in its other three Jiffy Lube facilities, the platform ramps abutting the pit where Blanche fell "had zero utility and could be easily removed." Plaintiffs maintain that because the trial court excluded evidence regarding the floors at Defendant's other three facilities, "the jury was left with the impression that the ramps which created the drop-off were absolutely necessary and could not be removed regardless of the standard of care exercised by Defendant." Plaintiffs continue:

> The evidence excluded by the Trial Court would have conclusively established that the drop-off was a very unusual condition, was not required by any building code, was totally unnecessary for the effective operation of Defendant's business and could very easily and effectively been removed, thereby totally eliminating every aspect of this hazard and its potential for serious injury.

Plaintiffs' assertion that the "drop-off" was not required by any building code is arguably incorrect. Plaintiffs' final witness was Jerry King, an official of the Springfield Building Regulations Department. By King's testimony (outside the presence of the jury), Plaintiffs offered to

prove that from 1970 until 1987, a provision in the building code for the City of Springfield required that an opening in a floor be protected by a "6–inch curb or ramp" to prevent accumulation of explosive liquids or vapors and prevent spilling to a lower floor. Plaintiffs further offered to prove by King's testimony that Defendant's Jiffy Lube facilities were built while such requirement was in effect, and that the code allows exceptions if something cannot be constructed in strict conformity with it.

The trial court asked Plaintiffs' lawyer whether he expected to prove by King that the place where Blanche fell was in violation of the code. Plaintiffs' lawyer answered, "Yes, Your Honor, that it was in violation of the code and that defendant intentionally did that and knew of the violation at the time...."

The trial court refused the offer. Undaunted, Plaintiffs then presented King as a witness to the jury. During his testimony, Plaintiffs offered (in a bench conference) to prove the floor where Blanche fell "was not constructed as approved" and the floors in Defendant's other Jiffy Lube facilities were flat. The trial court refused the offer.

During cross-examination of King, Defendant elicited this testimony:

Q Now, this curb or ramp—you're talking about a vertical distance of six inches or more?

A Yes.

Q And it can be concrete?

A Be anything.

Q Steel?

A Yes.

Q Or a combination of both, as long as we've got six inches.

A Yes.

On redirect examination of King, this colloquy occurred:

Q ... If I were building a Jiffy Lube ... with a hole in the floor that came across such as this requirement, curb requirement, had problems making it work and still meeting the code, would you be one of the persons I would come

to for the city to see about getting a variance?

A Yes, but ... I wouldn't issue a variance.

Q And why's that?

A There's other ways to do it.

Q Such as—

A Ramps, it says ramps right in the code.

Defendant presented the following testimony by its chief operating officer:

Q ... if you have a situation where you must service a car by having it driven over that six-inch vertical barrier, can you do that with most cars if you don't put something on the side to raise the car up?

A I would say 90 percent of the passenger cars wouldn't come in if—

Q Why?

A They'd hit on the bottom of it, usually the muffler or differential.

From the last-quoted testimony, it could be reasonably found that most automobiles could not be driven over the pits if there was a six-inch curb extending above the floor surface with no platform ramps by which a vehicle's wheels could be sufficiently elevated to allow the undercarriage to clear the top of the curb. That is, to (a) comply with the six-inch barrier requirement, while at the same time (b) enable an automobile to be driven over the pits without its undercarriage striking the top of the barrier, it is imperative that the wheels be elevated some three inches above the floor. This refutes the contention in paragraph "A" of Plaintiffs' point relied on that the ramps were "totally unnecessary."

The excerpts from King's testimony appear to contradict Plaintiffs' argument that the ramps at the Sunshine Street facility are not required by the building code. The code mandates a six-inch-high barrier around the pits. It is inferable from King's testimony that the combination of the three-inch-high ramps and the additional three inches of steel curb above the surface of the ramps meets the code's requirement of a six-inch barrier. According to Plaintiffs, the curbs around the perimeters of the pits at Defendant's other three

facilities (where the floors are flat) extend only some three inches above the floor surface. Consequently, if the floors of any of Defendant's Jiffy Lube facilities are in violation of the building code—an issue we need not decide—it appears more likely that the offending floors are at the facilities other than where Blanche fell.

 Determining whether evidence is relevant is often subjective, therefore a trial court is accorded considerable discretion in ruling on admissibility. *Sharaga v. Auto Owners Mut. Ins. Co.*, 831 S.W.2d 248, 256[25] (Mo.App.W.D.1992); *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App.S.D.1985). Unless discretion is abused, exclusion of evidence on relevancy grounds is not a basis for reversal. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205[3] (Mo. banc 1983). Accordingly, where evidence is excluded, the issue is not whether the evidence was admissible, it is whether the trial court abused its discretion in excluding it. *Copeland v. Mr. B's Pool Centers, Inc.*, 850 S.W.2d 380, 381[2] (Mo.App.E.D.1993).

Here, evidence about the floors at Defendant's other three Jiffy Lube facilities would have shown they arguably violate the building code in that the curbs around the pits are shorter than six inches. Yet Plaintiffs, as we understand them, wanted to argue the floor at the Sunshine Street facility where Blanche fell should have been like the floors at the other three facilities. That is, Plaintiffs would have argued, in effect, that in order to escape liability to Blanche, Defendant's floor at the Sunshine Street facility should have violated the building code. We know of no principle of law that requires a landowner to violate a building code in order to escape civil liability for injury to an invitee. Given the discretion with which a trial court is vested in determining relevancy of evidence, we find no error in the exclusion of evidence regarding the floors at Defendant's other three facilities.

Plaintiffs cite *Pierce v. Platte–Clay Elec. Cooperative, Inc.*, 769 S.W.2d 769 (Mo. banc 1989), and *Eagleburger v. Emer-*

*son Electric Co.*, 794 S.W.2d 210 (Mo.App. S.D.1990), which discuss admissibility of "industry standards." Those cases are inapplicable, as there was no showing here of any industry standards for the drive-in automobile service industry.

In part "B" of their first point, Plaintiffs maintain the relevancy of the floors at Defendant's other three facilities was "opened up" by Defendant's lawyer in opening statement and cross-examination. Plaintiffs cite numerous occasions where Defendant's lawyer referred to the yellow paint around the pit in the bay where Blanche fell. Plaintiffs state in the argument portion of their brief that the true purpose of the yellow paint is to warn of the open pit when a vehicle is not above it. Plaintiffs assert they were prohibited from pointing this out to the jury. Plaintiffs cite no page in the transcript where this allegedly occurred. Although we are not obliged to search the 504–page transcript, *Peters v. Dodd*, 328 S.W.2d 603, 609[6] (Mo.1959), we have done so, and have deduced Plaintiffs must be complaining about what transpired during a bench conference while an architect, Kent Smith, was on the stand.

Plaintiffs' lawyer said he wanted to ask Smith the purpose of the yellow paint at the site where Blanche fell, "comparing it to the other locations, which have identical color configurations without a step." When the trial court asked Plaintiffs' lawyer to clarify what he was proposing, Plaintiffs' lawyer responded:

> There are three other Jiffy Lubes owned by [Defendant].... All three have the same color arrangements on the floor of a broad, yellow stripe around the pit, and then going out to a gray floor. They are all even—not even—it's possible that these other three locations use the yellow for a step.

> There is nothing here that distinguishes this color configuration, color only, from the other three stores such as a warning of a three-inch drop-off or to watch your step.

> THE COURT: I understand that. Is it your offer to prove all those issues you just described?

[Plaintiffs' Lawyer]: It is my offer, because pursuant to court order, we examined the Battlefield store with the purpose of—of showing to the jury that the Battlefield store—and the witness is personally familiar with the stores at Campbell and Kearney because he was the architect for them and he personally put the warning colors around the pit.

The trial court refused the offer.

It is obvious the offer, as presented by Plaintiffs' lawyer to the trial court, included evidence about floors at Defendant's other three Jiffy Lube facilities. We have already held the trial court did not abuse its discretion in excluding such evidence.

Apparently, Plaintiffs' lawyer wanted to point out to the jury that the yellow paint surrounding the pits at Defendant's other three Jiffy Lube facilities was on flat floors, as compared to the yellow paint surrounding the pit at the site where Blanche fell, which was on ramps. As we understand Plaintiffs' theory of admissibility, the purpose of the yellow paint was to warn about the presence of the pits, not the presence of the ramps.

We fail to see how the "purpose" of the yellow paint is relevant. Whatever its purpose, it was on the ramp where Blanche fell. Defendant was free to argue the yellow paint made the ramp more visible; Plaintiffs were free to argue it did not, and that because of the ramp, the floor where Blanche fell was not reasonably safe.

■ If we have correctly grasped the import of part "B" of Plaintiffs' first point, we find no merit in it. Furthermore, Plaintiffs could have asked Smith the purpose of the yellow paint around the pit at the site where Blanche fell without inquiring about the pits at Defendant's other Jiffy Lube facilities. By including the other facilities in the offer of proof, Plaintiffs mixed admissible evidence with evidence the trial court had ruled inadmissible. If several facts are included in an offer of proof, some admissible and others inadmissible, then the whole, if properly objected to, is inadmissible. *Lott v. Kjar,* 378 S.W.2d 480, 483–84[1] (Mo.1964). Consequently, we cannot convict the trial court of error in rejecting the offer which is the subject of part "B" of Plaintiffs' first point.

In part "C" of their first point, Plaintiffs insist the trial court should have allowed certain testimony by architect Smith. We have carefully examined the portion of the transcript cited by Plaintiffs in support of this contention. There, we find a bench conference during which Plaintiffs' lawyer said he wanted to ask Smith whether, in his opinion, the site where Blanche fell was reasonably safe. The trial court said it would allow the question, but would then permit Defendant to present evidence regarding the number of people who had not fallen at the site. Afterward, Plaintiffs' lawyer did not ask Smith his opinion about whether the site was reasonably safe.

It is evident the trial court did not bar Plaintiffs from presenting Smith's opinion. The trial court merely stated that if Plaintiffs chose to do so, the trial court would permit Defendant to present certain evidence in rebuttal. When Plaintiffs chose not to present Smith's opinion, the question whether the rebuttal evidence would have been proper never arose. Part "C" of Plaintiffs' first point supplies no basis for reversal.

■ Plaintiffs' second point avers the trial court gave the jury an erroneous instruction hypothesizing contributory fault by Blanche. Defendant makes no effort to convince us the instruction was correct. Instead, Defendant insists Plaintiffs could not have been prejudiced by the instruction in that the jury found no negligence on the part of Defendant.

Rule 84.04(e), Missouri Rules of Civil Procedure (1993), provides that if a point relates to the giving of an instruction, such instruction shall be set forth in full in the argument portion of the brief. Here, the instruction about which Plaintiffs complain is not set forth anywhere in their brief, hence their second point is not preserved for appellate review. *Dennis v. St. Louis Board of Education,* 809 S.W.2d 20, 22[3] (Mo.App.E.D.1991); *McMullin v. Borgers,* 806 S.W.2d 724, 727–28[1, 2] (Mo.App.E.D.

1991); *McKee v. Wilmarth*, 771 S.W.2d 955, 957[4] (Mo.App.W.D.1989).

Even were the point preserved, it would be futile.

■ Plaintiffs' verdict-directing instruction against Defendant[2] commanded the jury to assess a percentage of fault to Defendant if the jury believed the propositions hypothesized in the instruction. As reported in the first paragraph of this opinion, the jury assessed no fault against Defendant.

In *Lee v. Mirbaha*, 722 S.W.2d 80 (Mo. banc 1986), a man brought a medical malpractice suit. His wife joined as a plaintiff, claiming derivative damages. The jury found for all defendants. On appeal, the plaintiffs assigned error in instructions hypothesizing contributory fault by the man. The Supreme Court of Missouri held it must assume the jury followed the instructions and would have assessed a percentage of fault to the defendants had the jury found the facts hypothesized in the plaintiffs' verdict-directing instructions. *Id.* at 84. However, the jury must have concluded the plaintiffs failed to establish at least one of the propositions required for a verdict assessing a percentage of fault against the defendants. *Id.* Consequently, the jury never reached the task of apportioning fault between the man and the defendants. *Id.* That being so, the plaintiffs could not have been prejudiced by error in the contributory fault instructions. *Id.*

*Lee* was followed in *Biever v. Williams*, 755 S.W.2d 291 (Mo.App.W.D.1988), and *Titsworth v. Powell*, 776 S.W.2d 416 (Mo. App.E.D.1989). In those cases (personal injury suits), juries found no fault by the defendants. The plaintiffs argued on appeal that the instructions submitting their contributory fault were erroneous. The appellate courts held any errors in such instructions were harmless in that the juries never reached the issue of apportionment of fault. *Biever*, 755 S.W.2d at 294; *Titsworth*, 776 S.W.2d at 423.

*Lee*, *Biever* and *Titsworth* demonstrate the absence of merit in Plaintiffs' second point. Because the jury assessed no fault against Defendant, Defendant was exonerated of liability for Blanche's injuries. Accordingly, any error in the instruction hypothesizing Blanche's contributory fault was harmless.

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.