David L. ROBINSON, Respondent,

v.

EMPIREGAS INC. OF HARTVILLE,
Appellant.

No. 19654.

Missouri Court of Appeals,
Southern District,
En Banc.

Aug. 2, 1995.

Motion for Rehearing or Transfer to
Supreme Court Denied Aug. 23, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Steven G. Emerson, Thomas H. Davis, Watson & Marshall L.C., Kansas City, and Jack L. Miller, Lebanon, for appellant.

Steve Garner, Strong & Associates, P.C., Springfield, for respondent.

CROW, Judge.

On November 3, 1983, Plaintiff, David L. Robinson, was driving an automobile west on Route H in Wright County, approaching the intersection of Route TT. Robert M. Copus, an employee of Defendant, Empiregas Inc. of Hartville, was driving a two-ton truck south on Route TT, approaching the same intersection. Copus turned east onto Route H; the vehicles collided. Plaintiff was injured.

Plaintiff sought damages from Defendant, claiming Copus's negligence caused the collision.[1] A jury assessed 100 percent of the fault against Defendant and found Plaintiff's damages to be $1,007,000. The trial court entered judgment per the verdict.[2]

Defendant appeals, presenting five assignments of error. We begin with the third, which reads:

1. Defendant admitted in its answer that at the time of the collision, Copus was "acting within the scope and course of its agency and employment."

2. The parties explain in their briefs that they stipulated Plaintiff's property damage was $3,300. The trial court added that amount to the

"The trial court erred in overruling Defendant's motion for new trial because the jury's allocation of 100% of the fault to Defendant was against the weight of the evidence and contrary to the physical facts in that Plaintiff, had he kept a careful lookout, could not have failed to avoid the accident."

Defendant's proclamation that the verdict allocating 100 percent of the fault to it was "against the weight of the evidence" is answered by *Housing Authority of the City of Rolla v. Kimmel,* 771 S.W.2d 932, 940[8] (Mo.App.S.D.1989):

"Whether a verdict is against the weight of the evidence is a question for the trial court alone, *Wilcox v. Coons,* 362 Mo. 381, 241 S.W.2d 907, 917[25] (1951), and a claim on appeal that the verdict is against the weight of the evidence presents nothing for review because the appellate court does not weigh the evidence in a case tried before a jury. *Walters v. Maloney,* 758 S.W.2d 489, 497 (Mo.App.1988), and authorities there cited."

■ Furthermore, a contention that a verdict is against the weight of the evidence implies there is some evidence to support the verdict. *Robbins v. Robbins,* 328 S.W.2d 552, 556[9] (Mo.1959). That is inconsistent with the second contention in the third point—that the allocation of 100 percent of the fault to Defendant was "contrary to the physical facts." As we understand the second contention, Defendant maintains there was no evidence to support the jury's allocation of fault. In the argument following the second contention, Defendant asserts that testimony contradicted by "undisputed physical facts" is not substantial evidence.

Despite the inconsistency between the second contention and the first contention, we shall address the second insofar as we are able to divine its import from the argument following it.

■ The statement of facts in Defendant's brief sets forth a version of the evidence favorable to Defendant. The statement of facts in Plaintiff's brief sets forth a version favorable to Plaintiff.[3] In narrating enough evidence to address the second contention in Defendant's third point, we are mindful that in determining whether there was sufficient evidence to support the judgment, we must consider the evidence in the light most favorable to the party who prevailed on the verdict. *Seward v. Terminal Railroad Assn. of St. Louis,* 854 S.W.2d 426, 427–28[1] (Mo. banc 1993). That party is Plaintiff.

■ Viewed favorably to Plaintiff, the evidence establishes that Trooper James Michael Stewart of the Missouri State Highway Patrol arrived at the collision site at 11:29 a.m., some 45 minutes after the collision. The surface of Routes H and TT is asphalt; Route H is 19 feet wide. Stewart saw no skid marks.

On his report, Stewart diagrammed the position of the vehicles at the time he arrived. The diagram shows Defendant's truck (which Stewart understood was approximately 25 feet long) headed southeast. A small portion of the right front corner of the truck extends south of the south edge of Route H; the left rear corner of the truck is six feet south of the north edge of Route H. The diagram shows Plaintiff's automobile (which Stewart understood was approximately 18 feet long and six and a half feet wide) headed southwest. The right rear corner of the automobile is four feet south of the north edge of Route H; the left front of the automobile extends across the center of Route H into the eastbound lane. Stewart found a gouge mark in the asphalt some three and a half feet south of the center of Route H, beneath the left front corner of the automobile. Stewart concluded the gouge mark was the point of impact.

damages assessed by the jury. No issue is raised about that in this appeal.

3. Plaintiff accuses Defendant of omitting facts contrary to Defendant's claims of error and omitting facts necessary for proper resolution of the appeal. Defendant accuses Plaintiff of significantly misstating the evidence under the guise of *setting forth omitted facts. Such petulance does* not aid us in resolving this appeal.

Endeavoring to record how far the vehicles were from the intersection, Stewart "drew an imaginary line" projecting the east edge of Route TT south across Route H. From this line, he measured east to the right rear of the truck, recording the distance as 51 feet. He recorded the distance from the imaginary line to the right rear of the automobile as 78 feet. However, he testified at trial that he believed this was wrong, and that the 78 foot measurement was from the imaginary line to the front of the automobile. Then, this:

"Q Would that also be to the point of impact?

A It would be, yes, pretty close to the approximate point of impact."

Stewart recounted that the damage to the automobile was "primarily front and secondary left front"; the damage to the truck was "left front and left side but primarily left side." Photographs received in evidence confirm that testimony.

There is a stop sign for southbound vehicles on Route TT. As best we can determine from a "survey" received in evidence, the sign is approximately 55 feet north of the north edge of Route H projected across the intersection.

Stewart testified, "[I]f you stopped at the stop sign and looked and pulled out, you would really be taking a chance, in my opinion, so you're going to have to pull on up and look again...." As we fathom his testimony, Stewart meant that because of visual obstructions, a southbound vehicle on Route TT, after stopping at the sign, should stop again at the projected north edge of Route H and look east before turning onto Route H. Stewart explained there is a hillcrest on Route H some 600 feet east of the intersection, and that a westbound driver on Route H can see the intersection from the crest.

Plaintiff testified he was in his lane when he crested the hill. He saw the truck "back a ways" from the intersection. Plaintiff continued, "[The truck] was slowing down and I had the impression that he had seen me and he was going to come to a stop and let me go on by." However, said Plaintiff, when he (Plaintiff) was "close to the intersection," he realized the truck was not going to stop. Consequently, avowed Plaintiff:

"I slammed on my brakes and since he was coming from TT coming from my right, I turned my steering wheel to the left in an attempt to try to get in front of him or avoid it but when I slammed on my brakes I went into a skid and pretty much went straight but I slid over into the center part of the road.... I was neither on my side nor his side, I was dead center in the middle of the road at the time of the impact."

Defendant insists Plaintiff's account "is mathematically and physically impossible." Defendant cites the following passage from *Black v. Kansas City Southern Railway Co.*, 436 S.W.2d 19, 29 (Mo. banc 1968):

"[W]here physical facts speak with a force which overcomes testimony to the contrary, reasonable minds must accept and follow the physical facts and therefore cannot differ. It has long been the rule in this jurisdiction that where testimony is, beyond any reasonable doubt, contrary to established physical facts or laws and facts of common knowledge, it cannot be accepted as substantial evidence. And if the testimony of a witness upon a material issue is inherently impossible, or is so opposed to all reasonable probability as to be manifestly false, the courts are not bound to accept it and will wholly disregard it."

As we comprehend Defendant's argument, its hypothesis is:

(1) the point of impact was 78 feet east of the projected east edge of Route TT;

(2) Copus was driving the truck in second gear, which had a maximum speed of approximately eight miles per hour (not quite 12 feet per second[4]);

4. The trial court took judicial notice that a vehicle travels 1.46 feet per second at one mile per hour.

(3) at eight miles per hour, it would have taken the truck 6.5 seconds to travel from the point where it entered Route H to the point of impact;

(4) Plaintiff was driving 50 miles per hour as he crested the hill[5];

(5) during the 6.5 seconds it took the truck to reach the point of impact, Plaintiff had to travel at least 480 feet because, at 50 miles per hour, a vehicle travels approximately 74 feet per second.

Consequently, reasons Defendant, because there was an unobstructed view of the intersection from a point 600 feet east of it, Plaintiff "must have seen the truck enter the roadway when he was still at least 480 feet from the intersection." Therefore, says Defendant, Plaintiff "unquestionably had time to slow or simply remain in his own lane of traffic in order to avoid the accident."

To buttress that conclusion, Defendant directs us to a segment of Plaintiff's testimony during cross-examination which can be construed as an admission that he began braking a second and a half to two seconds before impact, when he was 150 to 200 feet east of the point of impact. Defendant characterizes that testimony as "a tacit admission by the plaintiff that he failed to react for over 4 seconds after seeing the Empire truck 'roll through' the stop sign."

Defendant presented the above argument to the jury, which obviously found it unconvincing. The jury may have rejected the argument because of testimony by Copus regarding the position of the truck at impact. On deposition, Copus testified, "The truck was close to being crossways in the road and the back of it was over the center line."

The jury could have concluded that in turning east onto Route H, Copus took an angle that allowed the left rear of the truck to stay in the westbound lane longer than it *would have if he had turned at a sharper angle*. The jury heard Copus testify his *"best estimate"* is that he first saw Plaintiff's automobile when it was "40 yards away,"

even though there was an unobstructed view from the intersection to the hillcrest, some 600 feet east. The jury could have inferred that as Copus was turning onto Route H, he did not notice Plaintiff, hence he (Copus) sensed no danger in turning at a shallow angle.

Such an inference would be consistent with the position of the truck as Trooper Stewart recorded it after impact. From Stewart's measurements, the jury could have found the left rear of the truck extended some three and a half feet into the north half (westbound lane) of Route H. The jury could also have found from the damage to the vehicles that the truck was headed southeast, not due east, at time of impact, a further indication that part of the rear of the truck occupied part of the westbound lane when the vehicles collided.

Finally, Defendant's premise that it took the truck 6.5 seconds to travel from the point where it entered Route H to the point of impact is based on Copus's testimony that he was driving in second gear, which had a maximum speed of eight miles per hour. The jury was not required to believe that testimony. *Georgescu v. K Mart Corp.*, 813 S.W.2d 298, 299 (Mo. banc 1991). The jury could have reasonably found the truck did not stop at the projected north edge of Route H, that it was gaining speed as it approached the point of impact, and that it reached the point of impact in fewer than 6.5 seconds.

In sum, Defendant's theory that the jury's assessment of fault was "contrary to the physical facts" is valid—if at all—only if the evidence is viewed favorably to Defendant. As explained earlier, we are forbidden to do that. Defendant's third point is meritless.

We next address Defendant's first point, which reads:

"The trial court erred in allowing Plaintiff to argue the adverse inference from Defendant's failure to call Captain Robert McKinney as an expert witness and in allowing Plaintiff to 'summarize' Captain

---

5. Plaintiff testified his speed was between "45 and 50."

McKinney's deposition testimony in closing argument because Captain McKinney had been identified and deposed and was therefore equally available to the Plaintiff and because Captain McKinney's deposition had never been admitted into evidence."

 We learn from Defendant's brief that McKinney is an "accident reconstruction expert" retained by Defendant, whose deposition was taken by Plaintiff before trial.[6] Plaintiff's lawyer, in opening statement, told the jury Defendant had hired McKinney and that McKinney had testified Plaintiff was traveling 50 miles per hour before the wreck. Additionally, Plaintiff's lawyer told the jury McKinney had testified Plaintiff put on his brakes about a second before impact, reducing his speed to 29 miles per hour, and that photographs of the damage indicate the truck was "cutting the corner," thus giving Plaintiff about two seconds to avoid the collision. According to Plaintiff's lawyer, McKinney had concluded Plaintiff "couldn't avoid it in two seconds." Defendant's lawyer voiced no objection to those revelations.

Defendant's lawyer, in opening statement, told the jury: "[T]he testimony you will hear from Captain McKinney was in response to hypothetical questions to [Plaintiff's lawyer]." Defendant's lawyer assured the jury "Captain McKinney ... is going to talk to you" about reaction times, braking times and other factors.

Neither side presented McKinney as a witness, and neither side presented anything from his deposition.

Defendant bases its first point on a verbal sparring match between counsel during final argument by Plaintiff's lawyer. The episode is lengthy, and we regret extending this opinion by reciting it. However, Defendant's first point requires us to set forth the dia-logue in context. Here it is, edited to the maximum extent possible:

"[Plaintiff's lawyer]: I ... told you in opening statement that ... defendants [sic] hired an expert witness ... named Captain McKinney and I took [his] deposition and I told you in opening statement that Captain McKinney would say these things.

[Defendant's lawyer]: Your Honor, I don't believe either one of us can talk about deposition testimony from witnesses that didn't appear and testify.

[Plaintiff's lawyer]: We can talk about what was stated in opening statement and he responded in opening statement and that's what I'm intending to do.

[Defendant's lawyer]: I don't know what he's got up there but if he does, I'll be happy to offer McKinney's testimony.

[Plaintiff's lawyer]: You have that opportunity.

[Defendant's lawyer]: I'm going to talk about quite a bit if he opens the door on it.

[Plaintiff's lawyer]: Those are the rules we'll play by.

THE COURT: All right. You'll be permitted to proceed.

[Plaintiff's lawyer]: I told you in opening statement ... [t]here's special training that is involved in accident reconstruction. Captain McKinney is the best in Kansas City. Empire Gas would hire the best and they did.

[Defendant's lawyer]: Your Honor, just so the record's clear, I object to this attempt to introduce evidence in closing argument that wasn't introduced in trial.

[Plaintiff's lawyer]: These are my state-mentin [sic] opening statement.

---

6. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Thornbury v. Morris Oil Company, Inc.*, 846 S.W.2d 238, 239[1] n. 2 (Mo.App.S.D.1993). A copy of McKinney's deposition is in the legal file. How-ever, the index to exhibits in the transcript contains no indication that the deposition was received in evidence, and neither party cites anyplace where the record shows the deposition was considered by the trial court. Therefore, we cannot consider it in this appeal. *National Indemnity Co. v. Liberty Mutual Ins. Co.*, 513 S.W.2d 461, 468[3] n. 8 (Mo.1974).

THE COURT: Okay, go ahead.

[Plaintiff's lawyer]: I told you in opening statement that captain McKinney would come into this courtroom and tell you David Robinson was traveling 50 miles an hour, exactly what David said.

I told you in opening statement captain McKinney would come into this courtroom and tell you ... Copus angled into the intersection while making his turn and I told you in opening statement that Captain McKinney would say that based upon ... this ... evidence, David had two seconds and he couldn't avoid the wreck and I told you in opening statement that Captain McKinney, the expert accident reconstructionist that I assumed would testify would tell you that David applied his brakes one second before impact and was able to slow to 29 miles per hour. [Defendant's lawyer] got up in opening statement and said, 'No, Captain McKinney will be here and Captain McKinney will not say those things' and ... I figured ... Captain McKinney will come in and either say what he said in his deposition or he may have changed his testimony and I waited and I waited and Captain McKinney did not come into this courtroom and deny a single thing I said in opening statement and he did not say what [Defendant's lawyer] said he would in his opening statement, and folks, I'll guarantee you, they spend their money for a man with those qualifications, if he would help them he would be here.

[Defendant's lawyer]: Your Honor, now this is improper argument assailing the motive and intention of opposing counsel.

THE COURT: Okay, we'll finish with that portion of it and the Court will admonish the jury to disregard the last statement of counsel impugning the defense counsel. Go ahead, please.

[Plaintiff's lawyer]: Now, defendants [sic] have known for ten years what caused this wreck and who's at fault, I can guarantee you that."

One of the complaints in Defendant's first point is that the trial court wrongly allowed

Plaintiff's lawyer to argue the "adverse inference" from Defendant's failure to present McKinney as a witness when McKinney was "equally available" to Plaintiff. Defendant devotes four pages of its brief and two pages of its reply brief educating us about the law governing argument where a witness is "equally available" to both sides.

■ The segment of the transcript cited by Defendant is set forth above. We have read it carefully and are unable to find anyplace where Defendant objected on the ground that McKinney was equally available to Plaintiff.

■ On appeal, a party is held to the specific objections presented to the trial court. *Schmitt v. Pierce*, 344 S.W.2d 120, 130[12] (Mo. banc 1961). An objection not presented to the trial court is not to be considered on appeal. *Federal Deposit Insurance Corp. v. Crismon*, 513 S.W.2d 305, 307[2] (Mo.1974). Because an appellate court is not a forum in which new points will be considered, but is merely a court of review to determine whether the rulings of the trial court, as there presented, were correct, a party seeking the correction of error must stand or fall on the record made in the trial court, thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal. *Handshy v. Nolte Petroleum Co.*, 421 S.W.2d 198, 202 (Mo.1967).

Inasmuch as Defendant did not make the "equally available" objection at trial, Defendant cannot present it on appeal.

We next address Defendant's complaint that the trial court allowed Plaintiff's lawyer to summarize McKinney's deposition testimony.

In the segment of the transcript cited by Defendant, the first comment by its lawyer is an objection that neither lawyer can talk about deposition testimony from a witness who did not appear and testify.

Plaintiff's lawyer responded that he could talk about what was said in opening statements and he intended to do so.

A debate thereupon ensued between counsel, ending in an exchange which the trial court could have construed as an understanding that Defendant would talk about McKinney's deposition testimony if Plaintiff "opens the door."

Only after Plaintiff's lawyer told the jury McKinney was the best at accident reconstruction in Kansas City and Defendant hired the best did Defendant's lawyer renew his objection about Plaintiff's lawyer attempting "to introduce evidence in closing argument that wasn't introduced in trial." The trial court allowed Plaintiff's lawyer to proceed over that objection. If error occurred, it was there.

■ Defendant correctly points out that closing arguments of counsel must be based upon the evidence. *Davis v. City of Independence*, 404 S.W.2d 718, 720[3] (Mo. banc 1966). However, that venerable rule does not fit what occurred here.

As we have seen, Defendant's lawyer did not object when Plaintiff's lawyer told the jury during opening statement that Defendant had hired McKinney and revealed to the jury some of the pretrial testimony McKinney had allegedly given. Instead, Defendant's lawyer told the jurors the testimony they would hear from McKinney was in response to hypothetical questions by Plaintiff's lawyer, and that McKinney would talk to them about such factors as reaction time, braking time, and other subjects. Defendant's lawyer did not dispute the assertion by Plaintiff's lawyer that Defendant had hired McKinney. Defendant's lawyer told the jury that McKinney had "for decades ... done accident investigation and accident reconstruction."

■ We infer that when Plaintiff's lawyer made his opening statement, he expected Defendant to present McKinney as a wit-

ness.[7] We further infer it was a tactical decision by Defendant's lawyer to voice no objection to the revelations about McKinney's pretrial testimony in the opening statement of Plaintiff's lawyer. Instead of objecting, Defendant's lawyer told the jurors that the testimony they would hear from McKinney was in response to questions by Plaintiff's lawyer based on the hypothesis that Plaintiff's account of the collision was true. Additionally, as we have seen, Defendant's lawyer told the jurors McKinney would talk to them about other things.

When the time came for final arguments, the jury had not heard the testimony from McKinney previewed by either lawyer in opening statements.

After the trial court told Plaintiff's lawyer, "Okay, go ahead," Plaintiff's lawyer reminded the jury of (a) what he said in opening statement concerning pretrial testimony of McKinney, and (b) what Defendant's lawyer said in response in his opening statement. Plaintiff's lawyer then pointed out that because McKinney never appeared as a witness, McKinney never said what Defendant's lawyer "said he would in his opening statement."

There are innumerable cases where one party has, in final argument, commented on his adversary's failure to present evidence. Surprisingly, however, there is scant authority addressing the situation here, where one party attacks the other in final argument for failure to present evidence mentioned by the latter in opening statement.

The closest Missouri case appears to be *State v. Benton*, 812 S.W.2d 736 (Mo.App. W.D.1991). There, the prosecutor outlined certain evidence to the jury in opening statement. Because the victim did not appear and testify, the prosecutor was unable to present some of the evidence he had prophe-

---

7. Plaintiff's brief so states, and refers us to an affidavit by Plaintiff's lawyer dated May 10, 1994, several weeks after trial. Because the affidavit was not before the trial court at the time the court made the ruling attacked in Defendant's first point, we cannot consider it. *Preston*

*v. Preston*, 823 S.W.2d 48, 50[5] n. 2 (Mo.App. E.D.1991). Our inference that Plaintiff's lawyer expected Defendant to present McKinney as a witness is drawn exclusively from the opening statement of Plaintiff's lawyer.

sied. In closing argument, the accused's lawyer said the prosecutor had not proved the elements of the crime because the victim did not testify. The accused's lawyer speculated that the prosecutor did not present the victim as a witness because she was not credible. In rebuttal, the prosecutor said the victim did not testify because she was afraid of the accused.

On appeal, the Western District of this Court held the closing argument by the accused's lawyer was proper and did not invite the prosecutor's retaliatory remarks. The opinion explained: "In opening, the [prosecutor] recounted [the victim's] version of [the crime]. Because [the victim] never testified, defense was allowed to argue that the state failed to produce the proof it promised in opening remarks." *Id.* at 741[8].

The keenest analysis of a situation such as that here appears in *Hinton v. Waste Techniques Corp.*, 243 Pa.Super. 189, 364 A.2d 724, 728–29[8] (1976), where the court said:

"An attorney cannot promise to prove certain facts to the jury, fail to prove them, and then expect to escape with impunity. His initial comments will have raised questions in the minds of the jurors. Once the question is raised and left unanswered it is subject to fair comment by the opposing party."

We recognize, of course, that most of what Plaintiff's lawyer said in closing argument concerned what he had said regarding McKinney's testimony in opening statement, not what Defendant's lawyer had said in opening statement. However, the closing argument of Plaintiff's lawyer did also address what Defendant's lawyer had said about McKinney's testimony in opening statement.

Plaintiff's theory that his lawyer's closing argument was permissible is that Defendant's lawyer, in opening statement, promised the jury McKinney would refute the pretrial testimony attributed to him by Plaintiff's lawyer, but Defendant's lawyer failed to fulfill that commitment.

The trial court faced a vexing situation. Plaintiff's lawyer was commenting in final argument on the failure of Defendant's lawyer to present evidence mentioned in the latter's opening statement, but in doing so Plaintiff's lawyer was also commenting on evidence mentioned in his own opening statement which was likewise never presented. The trial court had to balance the rule barring comment on unpresented evidence against the rule allowing comment about a party's failure to present promised evidence.

■ A trial court possesses broad discretion in the area of closing arguments, not lightly to be disturbed on appeal. *Lewis v. Bucyrus–Erie, Inc.*, 622 S.W.2d 920, 925[6] (Mo. banc 1981). Absent a clear abuse of such discretion, its ruling should control. *Norfolk and Western Railway Co. v. Greening*, 458 S.W.2d 268, 273[9] (Mo.1970). In *Lewis, supra*, the Supreme Court of Missouri held:

"The fact that an argument may touch upon two issues, one legitimately in the case and the other not, does not per se require its rejection."

622 S.W.2d at 927[14]. Applying that rule, the Supreme Court found no reversible error where the trial court allowed such an argument. *Id.* at 928.

■ Given the unique circumstances here, we cannot convict the trial court of abusing its discretion in telling Plaintiff's lawyer: "Okay, go ahead." After that ruling, Defendant registered no objection until Plaintiff's lawyer told the jury that if McKinney would help Defendant "he would be here." When Defendant's lawyer objected to that remark, the trial court admonished the jury to disregard it.

We do not imply the trial court would have committed reversible error had it barred Plaintiff's lawyer from commenting about McKinney's pretrial testimony in final argument. All we hold is that on the record before us, the trial court did not abuse its discretion in ruling the way it did on the objections presented by Defendant as the argument of Plaintiff's lawyer unfolded.

The complaint in Defendant's first point was raised in its motion for new trial, hence

the trial court had an opportunity to consider whether the argument of Plaintiff's lawyer, if improper, was so prejudicial that a new trial was required. The trial court denied the motion.

■ Determining the prejudicial effect of final argument is a matter within the discretion of the trial court, and its judgment on that matter will not be disturbed unless there was an abuse of discretion. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 434[15] (Mo. banc 1985). Considering the episode in its entirety, we find no abuse of discretion. Defendant's first point is denied.

We next address Defendant's fifth point, which reads:

"The trial court erred in excluding evidence regarding the Plaintiff's possession of marijuana and driving under the influence and the Defendant was prejudiced thereby because a submissible defense was presented and Defendant was precluded from arguing and submitting the issue to the jury."

We are told in the argument following the fifth point that Plaintiff filed "Plaintiff's First Motion in Limine to Suppress" some three weeks before trial.[8] We are also told that the trial court "sustained in large part the section in plaintiff's motion in limine seeking to exclude 'any reference to the fact that a marijuana joint was found in [Plaintiff's] car after this wreck or any questions implying that at one time [he] smoked marijuana.' "[9]

Defendant made an offer of proof through testimony by Trooper Stewart, who revealed he found a "partially smoked" marijuana cigarette and "some type of drug paraphernalia" in Plaintiff's automobile after the collision. Stewart recalled the marijuana was "less than 35 grams." Defendant was "is-

sued a misdemeanor citation for it." Stewart believed the paraphernalia was a hemostat,[10] but was not positive about his recollection.

Stewart smelled no marijuana on Plaintiff and put nothing in his report indicating Plaintiff had consumed marijuana.

Later in the trial, counsel argued the admissibility issue to the trial court, on the record. We find no ruling by the trial court in that segment of the transcript. However, it is inferable the trial court determined the jury could be told that Plaintiff was convicted of possessing the marijuana Stewart found in Plaintiff's automobile. We draw that inference from events that occurred on the ensuing day of trial. Outside the presence of the jury, Plaintiff's lawyer announced:

"Your Honor, in accordance with our discussion yesterday about this marijuana conviction, I prepared the formal instruction that I would request the Court to read before we get into the convicion [sic] issue and also give at the end of the case. It's my understanding the Court has indicated that it will do that."

The trial court confirmed it would follow that procedure, and addressed Defendant's lawyer: "[Y]ou make whatever record you want to make."

Defendant's lawyer replied, "We have no objection to the instruction as written."

Later in the trial, during direct examination of Plaintiff by his lawyer, the trial court instructed the jury without objection by Defendant:

"The Court ordered counsel for both parties not to mention the date of the incident resulting in Mr. Robinson's conviction for possession of marijuana until Mr. Robinson testified. There is no evidence that David Robinson smoked mari-

---

8. We have searched the legal file in vain for this motion.

9. In support of that statement, Defendant cites us to page 361 of the transcript where Defendant's lawyer, outside the presence of the jury, told the trial court he wanted to make an offer of proof

about a topic the trial court had ordered him to avoid.

10. Stewart explained a hemostat is a common instrument "utilized to hold a marijuana cigarette when it gets to the very end."

juana on the date of the wreck and you cannot infer that David Robinson smoked marijuana on the day of the wreck."

Plaintiff's lawyer then questioned Plaintiff about the marijuana. Plaintiff admitted Trooper Stewart found "a small quantity of marijuana" in Plaintiff's automobile. Plaintiff recounted he was convicted of "misdemeanor marijuana possession" and paid a $100 fine and court costs.

Defendant's fifth point does not identify the "evidence regarding the Plaintiff's possession of marijuana and driving under the influence" which the trial court allegedly excluded. Evidently, Defendant is confident we can figure out what that evidence is. Having been assigned the task, we have seined the argument following the fifth point in an effort to ferret out the forbidden evidence.

Defendant first refers to testimony by Copus that Plaintiff was on the wrong side of the road when he crested the hill and remained on that side without slowing or swerving until impact. None of that testimony was excluded, and Defendant does not cite anyplace where the record shows it was barred from presenting similar evidence from other sources.

Next, Defendant refers to the "half-smoked marijuana cigarette" and the "roach clip" found in Plaintiff's automobile. As we have seen, Plaintiff testified Trooper Stewart found a small quantity of marijuana in Plaintiff's automobile which resulted in Plaintiff's conviction of "misdemeanor marijuana possession," for which he was fined $100 and costs. We have searched the 51 pages of Plaintiff's cross-examination by Defendant's lawyer and have found no questions about the marijuana or the "roach clip" and no request by Defendant's lawyer that the trial court permit further inquiry about those items.

■ Granting a motion in limine does not automatically result in permanent exclusion of the disputed evidence. *State v. Evans*, 639 S.W.2d 820, 822[1] (Mo.1982); *Woodiel v.*

*Barclay Enterprises, Inc.*, 858 S.W.2d 247, 250[1] (Mo.App.S.D.1993). Such a ruling is interlocutory only, and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence. *Evans*, 639 S.W.2d at 822[1]; *Woodiel*, 858 S.W.2d at 250[2].

■ Consequently, subject to a narrow exception inapplicable here, appellate courts will not review a claim that evidence was erroneously excluded unless the party seeking to present it makes a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883[14] (Mo. banc 1985).

Here, as best we have been able to reconstruct the sequence of events: Plaintiff filed a motion in limine some three weeks before trial; the trial court ruled on the marijuana issue on a later date, but before trial; trial began and Defendant made its offer of proof during the testimony of Trooper Stewart, the second witness; counsel subsequently argued the marijuana issue anew; the trial court altered its pretrial ruling (whatever it was); Plaintiff's lawyer prepared the instruction regarding Plaintiff's marijuana conviction; the trial court gave the instruction without objection by Defendant; Plaintiff then testified about the marijuana found by Stewart and Plaintiff's conviction of possessing it; Defendant thereafter sought to elicit no additional evidence on the subject.

The only evidence about marijuana in Defendant's offer of proof that was not presented by Plaintiff in his testimony was: (a) the marijuana weighed less than 35 grams, (b) the marijuana was in a partially smoked cigarette, and (c) there was a hemostat in Plaintiff's automobile. After Plaintiff's direct examination, Defendant made no attempt to present any of that evidence, either by cross-examination of Plaintiff or from any other source. We henceforth refer to such evidence as "the unpresented details."

■ Wide latitude is allowed in the cross-examination of a party to an action who offers himself as a witness; the scope and

extent of such cross-examination in a civil case is discretionary with the trial court. *Roberts v. Emerson Electric Manufacturing Co.*, 362 S.W.2d 579, 584[8] (Mo.1962). Generally, a witness may be cross-examined as to the matters to which he testifies on direct examination. *Louis Steinbaum Real Estate Co. v. Maltz*, 247 S.W.2d 652, 655[2] (Mo. 1952).

Regardless of the trial court's earlier rulings about the marijuana, once Plaintiff testified about it on direct examination, Defendant had an opportunity to cross-examine Plaintiff about the unpresented details. We will not permit Defendant to forgo that opportunity, then mousetrap the trial court on appeal by accusing the trial court of barring such evidence.

By approving the cautionary instruction drafted by Plaintiff's lawyer, the trial court clearly indicated it would receive evidence that Plaintiff was convicted of possessing marijuana found by Stewart in Plaintiff's automobile. The instruction stated there was no evidence that Plaintiff smoked marijuana on the date of the wreck.

When the trial court called on Defendant's lawyer to make a record regarding the instruction, Defendant's lawyer voiced no objection. Had Defendant's lawyer possessed evidence that Plaintiff was driving under the influence of marijuana, Defendant's lawyer could have objected to the instruction and made an offer of proof.

■ An appellant cannot complain of an alleged error in which he joined or acquiesced at trial. *Taylor v. Cleveland, C., C. & St. L. Ry. Co.*, 333 Mo. 650, 63 S.W.2d 69, 74–75[15] (1933), *cert. denied*, 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933). The silence of Defendant's lawyer here is analogous to *Rogers v. City of Deepwater*, 240 Mo.App. 795, 219 S.W.2d 750 (1949). There, the trial court excluded certain evidence tendered by the plaintiffs, but held it could be presented in rebuttal. The appellate court held that inasmuch as the plaintiffs made no effort to present the evidence in rebuttal, they could not assign the trial court's ruling as error. 219 S.W.2d at 757[7].

■ We apply the same rationale here. At the urging of Defendant during trial, the trial court altered its pretrial ruling about the marijuana. Plaintiff then testified about the marijuana and his conviction of possessing it. Thereafter, Defendant neither (a) undertook to cross-examine Plaintiff about the unpresented details, nor (b) offered any proof about the unpresented details from any other source. Consistent with *Rogers*, 219 S.W.2d at 757[7], we hold Defendant cannot now predicate error on the trial court's earlier rulings.

The only other evidence mentioned by Defendant in the argument following its fifth point is evidence that Plaintiff "refused to speak" to Stewart. Defendant adduced such testimony from Stewart, without objection by Plaintiff. Defendant does not cite anyplace where the record shows it was barred from presenting additional evidence of Plaintiff's silence.

In sum, when the record is carefully examined, the absence of merit in Defendant's fifth point becomes manifest. Point denied.

We turn now to Defendant's second point; it reads:

"The trial court erred in overruling Defendant's objection to the calculation of lost income testimony offered by Plaintiff's expert witness Larry Cox because Mr. Cox's testimony was wholly speculative and based on demonstrably false assumptions as to Plaintiff's future employment."

Plaintiff maintains the point is defective in that it fails to state wherein and why the trial court's ruling is claimed to be erroneous. *See:* Rule 84.04(d), Missouri Rules of Civil Procedure (1995), and *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Plaintiff's observation is accurate. The point fails to explain wherein Cox's testimony was "wholly speculative" and supplies no clue as to the "demonstrably false assumptions" on which the testimony was based. Howev-

er, as we did with Defendant's fifth point, we have sifted the argument following the second point in an effort to extract its import.

At the time of the wreck, Plaintiff was a 24–year–old electrical lineman. The thrust of Defendant's second point, as we divine it, is that Cox, an economics professor, based his calculation of Plaintiff's future lost earnings on unwarranted assumptions regarding Plaintiff's future employment and wages had he not been injured.

Defendant cites *Haley v. Byers Transportation Co.,* 414 S.W.2d 777 (Mo.1967), which holds that the value of a loss of future earnings may not rest upon speculation. *Id.* at 781–82[5].

Plaintiff responds by citing *Sampson v. Missouri Pacific Railroad Co.,* 560 S.W.2d 573 (Mo. banc 1978), which recognizes that inevitably there is a degree of speculation in determining the present value of the wages an injured party would have earned but for his injury. *Id.* at 589. Plaintiff reminds us that the law requires only that the evidence, with such certainty as it permits, lay a foundation to enable the jury to make a fair and reasonable estimate. *Weindel v. DeSoto Rural Fire Protection Association, Inc.,* 765 S.W.2d 712, 714[1] (Mo.App.E.D.1989).

 Admission or exclusion of the testimony of an economic expert regarding the value of an injured party's lost future earnings is a matter within the discretion of the trial court, and exercise of that discretion will not be interfered with unless it plainly appears that such has been abused. *Spain v. Brown,* 811 S.W.2d 417, 423 (Mo.App.E.D. 1991). The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force; the question of whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for the court. *Id.*

 Having carefully considered Defendant's challenge to the admissibility of Cox's calculation of Plaintiff's lost future earnings, we find no abuse of discretion by the trial court in receiving such evidence. Defendant's second point is denied.

Defendant's fourth point, the only one not yet addressed, reads:

"The trial court erred in overruling Defendant's motion for new trial because the jury's award of $1,007,000 in damages was excessive and against the weight of the evidence in that given the nature and extent of Mr. Robinson's injuries and total medical expenses of $25,629, the verdict indicates bias and prejudice on the part of the jury, which must have been heavily influenced by the speculative and inadmissible testimony of Plaintiff's economic expert."

The centerpiece of the point is the premise that Cox's testimony was inadmissible, a proposition we rejected in denying Defendant's second point.

 Defendant's contention that the damage award was against the weight of the evidence is answered by *Veach v. Chicago and Northwestern Transportation Co.,* 719 S.W.2d 767 (Mo. banc 1986). If, as here, a trial court refuses to grant a new trial on the ground that the amount of damages awarded in a jury verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence. *Id.* at 769[1].

 Defendant's claim that the damage award is excessive, indicating bias and prejudice by the jury, is answered by *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852 (Mo. banc 1993). On appeal, the size of the verdict alone will not establish passion and prejudice by the jury. *Id.* at 872[44]. An appellant must show (1) the verdict, viewed in the light most favorable to the prevailing party, was glaringly unwarranted, and (2) trial error or misconduct by the prevailing party was responsible for producing the passion or prejudice. *Id.* at 872.

 Defendant has failed to satisfy requirement 2. The fourth point identifies no

misconduct by Plaintiff that was responsible for producing the alleged bias and prejudice, and the only alleged trial error mentioned in the fourth point is the receipt of Cox's testimony, which we have ruled admissible. Because requirement 2 was unmet, we need not consider requirement 1.

Judgment affirmed.

SHRUM, C.J., PREWITT, J., and WILLIAM H. PINNELL, Senior Judge, concur.

GARRISON, J., dissents and files dissenting opinion.

FLANIGAN and MONTGOMERY, JJ., dissent and concur in dissenting opinion of GARRISON, J.

PARRISH, J., recused.

GARRISON, Judge, dissenting.

I respectfully dissent. My dissent, however, is restricted to the majority's ruling on Defendant's first point. I agree that Defendant did not preserve for appeal its contention that Plaintiff's argument constituted an adverse inference on its failure to call Captain McKinney as a witness. I disagree, however, with the conclusion that the trial court did not abuse its discretion in permitting the argument by Plaintiff's counsel concerning the content of Captain McKinney's opinions.

Plaintiff's attorney, in opening statement, said that Empiregas had hired an expert accident reconstructionist named Captain McKinney, a retired Kansas City police officer, who "consults with large companies and a large part of his work involves large companies defending lawsuits." He then said:

but Captain McKinney says some things that are important in this case.

He says, first of all, that he can look at David's car, I believe he looked at these photographs and this photograph (Indicating), he didn't look at the actual car, didn't measure the actual car but from looking at these photographs he is able to determine a crush profile.

Captain McKinney can look at that photograph and tell you at point C–1 that car crushed in at 19.2 inches and C–2 9.2 inches and he's got a crush profile of the car and from that he's worked a physics formula and he has testified that David Robinson was traveling 50 miles per hour before this wreck, exactly what David says.

He has testified that David Robinson put on his brakes probably about a second before this wreck, exactly what David says. He says that David was able to slow in that one second from 50 miles an hour to 29 miles per hour and bring his speed down to probably a level that saved his life, so the basic facts of what Captain McKinney will say, that's what David says, that's what Mr. Copus says, but Captain McKinney says this. He says, "I wasn't there and I don't know how that truck driver drove that day, I don't know how Mr. Copus drove."

He says Mr. Copus came down, straight down the roadway and turned like this (Indicating), and traveled straight like this (Indicating), then that would take about as much time as David could travel this distance (Indicating).

I said, "Okay, but does that match the damage to the photographs?" He said, "No, that doesn't match the damage to the photographs."

I said, "Okay, what matches the damage to the photographs" and he says, "The truck cutting the corner, coming down like this (Indicating) matches the damage to the photographs and David would have approximately two seconds in which to avoid this collision and he couldn't avoid it in two seconds."

These statements did not necessarily indicate that Captain McKinney was a witness expected to be called by Defendant rather than Plaintiff.

Defendant, in opening statement, indicated that Captain McKinney would testify about

"reaction times and braking times and wet pavement and dry pavement and so forth." He also indicated that he would testify that a driver confronted with a situation like this 600 feet away could react and stop in approximately 250 feet.

In closing argument, Plaintiff's counsel said:

and I also told you in opening statement that I thought liability in this case was not a complicated factor because defendants hired an expert witness and [sic] named Captain McKinney and I took Captain McKinney's deposition and I told you in opening statement that Captain McKinney would say these things.

At that point, Defendant's counsel objected that Plaintiff was discussing "deposition testimony from witnesses that didn't appear and testify." After a colloquy between counsel which was set out in the majority opinion, the trial court permitted Plaintiff's counsel to proceed. He then said the following which was outside the record:

Captain McKinney is the best in Kansas City. Empire Gas would hire the best and they did.

Again, Defendant objected to introducing evidence in closing argument that wasn't introduced at trial but this time the objection was clearly overruled after Plaintiff's attorney said, "These are my statement in [sic] opening statement." Plaintiff's counsel then proceeded to summarize the alleged opinions of Captain McKinney which he had included in his opening statement and which are set out in the majority opinion. Included was the following:

and I waited and I waited and Captain McKinney did not come into this courtroom and deny a single thing I said in opening statement and he did not say what [Defendant's attorney] said he would in his opening statement, and folks, I'll guarantee you, they spend their money for a man with those qualifications, if he would help them he would be here.

Plaintiff's attorney, in his argument, also used what is described as a large poster containing the following:

## CAPT. McKINNEY

1. David was traveling 50 m.p.h.

2. The skidmarks show Copus angled into the intersection while making his turn.

3. David had two seconds and could not avoid the wreck.

4. David applied his brakes one second before impact and slowed to 29 m.p.h.

This argument was a continuation of what Plaintiff's attorney said in opening statement, not what was admitted in evidence. Arguments of counsel must be based on the evidence. *Davis v. City of Independence*, 404 S.W.2d 718, 720 (Mo. banc 1966). While the field of jury argument is broad, it is not so broad as to permit a party to go beyond the record. *Cook by Cook v. Willis*, 885 S.W.2d 791, 793 (Mo.App.S.D.1994). In the instant case, Plaintiff's attorney argued that "Captain McKinney did not come into this courtroom and deny a single thing I said in opening statement. . . ." What Plaintiff's attorney said in opening statement was not evidence, yet it was treated as such in closing argument with the approval of the trial court.

Plaintiff's attorney also argued that Captain McKinney, whom he had already identified in opening as often working for big companies in defending cases, essentially agreed with his client's version of critical facts. All of this was outside the record and not supported by evidence. It was not restricted to comments on Defendant's failure to present evidence which *it* promised in opening statement. Rather, it was an argument based on anticipated evidence which Plaintiff's counsel summarized in his opening statement, and it even went beyond the parameters laid out at that time by adding that Captain McKinney was the "best" accident reconstructionist in Kansas City. In fact, Plaintiff's counsel clearly implied that the matters contained in his opening statement and closing argument were based on the witness's deposition, and he also used a visual aid to portray the contents of Captain McKinney's opinions. It was outside the record but was presented as fact.

Defendant made no mention of Captain McKinney in it's closing argument. Notwithstanding that fact, Plaintiff's counsel, in the closing portion of his argument, again told the jury they could consider what he had said in the opening portion of his argument about Captain McKinney. He also referred to the fact that there had been no mention, in Defendant's closing argument, of Plaintiff's counsel's statements about Captain McKinney and said:

> You decide why it wasn't and I'll tell you one thing, if somebody says something and I'm in a case and it's my job to defend that case, I'm going to answer that question before I sit down, that's common sense but instead it's, let's accuse and let's confuse, that's the cry of people in lawsuits.

These comments constituted yet another reference to the statements of Plaintiff's counsel about what Captain McKinney's deposition testimony had been and, in effect, constituted an argument that defense counsel should have, but failed to, refute those statements. This was a further use of Captain McKinney's deposition testimony as the equivalent of evidence, although it was never introduced.

Plaintiff effectively created an adverse inference from Defendant's failure to call Captain McKinney. While Defendant did not object to the argument on that basis, it did object that Plaintiff was arguing matters not in evidence. A party may not benefit by reading favorable portions of a witness's deposition and also have the advantage of an adverse inference from the failure to call the witness. *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 702 (Mo. banc 1990). That is effectively what happened here.

Liability was a contested issue in this case. Defendant was found to be 100% at fault, which was consistent with Captain McKinney's alleged opinion that Plaintiff "could not avoid the wreck." In my opinion, the trial court abused its discretion in permitting the argument which I believe was prejudicial and warrants a reversal and remand for a new trial.