

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| DANIEL CROWDER, | ) | No. ED111416 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 20SL-CC01975 |
| | ) | |
| INGRAM BARGE COMPANY, LLC, | ) | Honorable Kristine A. Kerr |
| | ) | |
| Appellant. | ) | Filed: October 31, 2023 |

Before Lisa P. Page, P.J., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

Ingram Barge Company, LLC (Ingram) appeals from the trial court's judgment entered upon a jury verdict in favor of Daniel Crowder (Crowder) on his claims against Ingram for negligence under the Jones Act,[1] unseaworthiness, maintenance, and cure under general maritime law. We affirm.

## Background

While working on a vessel, Crowder fell and injured his right knee in the course of his employment with Ingram. He filed a three-count petition against Ingram for his injuries. Following trial, a jury returned a verdict in the amount of $3,325,000.00, but assessed twenty-five percent fault to Crowder. The trial court accordingly reduced the jury's award and entered judgment in his favor of $2,493,750.00. Ingram appeals.

---

[1] The Jones Act, 46 U.S.C.App. Section 688, *et seq.*, provides injured seamen with a cause of action if injured in the course of employment as a "member of a crew of any vessel." 33 U.S.C. Section 902(3)(G).

**Discussion**

Ingram asserts five points on appeal. Points one through four allege the trial court erred in admitting the testimony of Dr. Rebecca Summary (Dr. Summary), a forensic economist who testified on behalf of Crowder regarding his economic loss as a result of the knee injury. In point one, the basis for this claim is that she impermissibly substituted an "invented" variable of "offset earnings," which rendered her opinion unreliable and inadmissible. In its second point, Ingram argues Dr. Summary's pre-injury earnings were improperly calculated based on speculation. Points three and four assert Dr. Summary's testimony was inadmissible because she relied on unsupported assumptions of impairment. In the fifth and final point on appeal, Ingram argues the trial court erred in denying its motion for remittitur because the jury's award exceeded fair and reasonable compensation for Crowder's knee injury.

**Points I-IV**

Each of Ingram's first four points on appeal claim that Dr. Summary's testimony at trial was improperly admitted. Prior to trial, Ingram filed a motion in limine seeking to exclude her testimony regarding Crowder's alleged losses arising from impaired earning capacity. In its motion, Ingram claimed Dr. Summary's methodology was "flawed" and her opinions lacked evidentiary support. The trial court denied Ingram's motion in limine.

*Standard of Review*

The decision to admit or exclude an economic expert's testimony is a matter within the discretion of the trial court and we will not interfere absent an abuse of that discretion. *Robinson v. Empiregas Inc. of Hartville*, 906 S.W.2d 829, 842 (Mo. App. S.D. 1995). Crowder argues Ingram's claims on appeal have not been properly preserved for our review because Ingram only requested a "continuing objection" at the start of Dr. Summary's testimony and raised no further

2

objection. We agree the grant of a motion in limine is interlocutory and subject to change at trial. *Id*. at 840. However, in order to minimize interruption during Dr. Summary's testimony, the trial court allowed Ingram a continuing objection to her testimony on the grounds asserted in the motion in limine. It is upon those grounds Ingram now claims Dr. Summary's testimony was inadmissible. Thus, Ingram sufficiently preserved the issues for appeal.

*Analysis*

Each of Ingram's arguments in points one through four concern the admissibility of Dr. Summary's trial testimony which is governed by Section 490.065 RSMo (Supp. 2017).[2] Pursuant to the statute, the trial court is required to determine whether (1) the expert is qualified; (2) the testimony will assist the finder of fact; (3) the testimony is based upon facts or data reasonably relied on by experts in the field; and (4) the facts or data upon which the expert relies are otherwise reasonably reliable. *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299, 310-11 (Mo. banc 2011); Section 490.065. We do not find any abuse of discretion in the admission of Dr. Summary's testimony. Ingram does not dispute Dr. Summary was qualified to testify. Her testimony would assist the trier of fact. The facts and data she relied upon in making her calculations, which included tax returns, documentation from Ingram regarding its rates of pay, published growth rates, and other federal data, were both reasonably relied upon by experts in her field and otherwise reliable. *See Doe v. McFarlane*, 207 S.W.3d 52, 62 (Mo. App. E.D. 2006).

If the trial court determines the expert's testimony meets the statutory requirements discussed above, the trial court must admit the testimony in a "straightforward" application of the statute. *Kivland*, 331 S.W.3d at 311. While the trial court is required to ensure the statutory

---

[2] All further statutory references are to RSMo (Supp. 2017).

factors are met, the court does not have to assess the *degree* to which they are met. *Id*. If the expert is sufficiently qualified, as in this case, the decision to accept his or her analysis of the facts and data is for the jury to decide. *Id*.

A plaintiff may prove resulting loss of time and consequently earnings and may recover for the loss of future earnings due to impairment to the plaintiff's earning capacity. *Messina v. Prather*, 42 S.W.3d 753, 764 (Mo. App. W.D. 2001). In order to recover for such losses, a plaintiff must present evidence of value that is reasonably certain and not speculative. *Id*. However, we recognize that inevitably there is a degree of speculation required to determine the present value of wages the plaintiff may have earned but for the injury. *Robinson*, 906 S.W.2d at 842 (citing *Sampson v. Missouri Pacific RR. Co.*, 560 S.W.2d 573, 589 (Mo. banc 1978)). Any alleged weakness in the expert's conclusions goes to the weight of the evidence, and not the admissibility. *Kivland*, 331 S.W.3d at 311 (internal citations omitted).

### "Offset Earnings"

In point one on appeal, Ingram claims Dr. Summary included an "invented" variable of "offset earnings" in her calculation of Crowder's post-injury earning capacity. During her testimony, Dr. Summary explained she was asked to calculate Crowder's economic loss as a result of his knee injury. She testified her assessment of his lost earning capacity included three different estimations of what he would have earned over his lifetime. She evaluated multiple factors, including his reported income from his employment with Ingram, his potential for promotions throughout his career, different retirement ages, as well as income earned from self-employment during times he was not on a vessel. Dr. Summary used Crowder's self-employment income, which she referred to as "offset income," to calculate the income he would have continued to earn in the future to offset the loss of employment with Ingram. She worked

4

from the assumption that Crowder would have continued employment at some form of "side job." Dr. Summary explained that in making the calculation, she took his current earnings, minus the amounts earned from other employment, or "side jobs," and used the difference as "offset income," which Crowder could continue to earn in the future. For example, in 2019, Crowder's self-employment income was $36,766. She used this higher number of income, minus the lowest number earned in 2018, which was $15,175, to arrive at an estimated amount of income of $21,591 that Crowder could be expected to earn from self-employment in the future.

This calculation was supported by substantial evidence, including Crowder's tax returns and his own testimony regarding his employment history. The tax returns reflected income earned from employment other than with Ingram, and Crowder's testimony corroborated this. During his time off the vessel, he would work in farming and earn additional income. Since leaving Ingram, he has also done work with his bulldozer, started a small meat packaging business, and sold insurance, making income from each of those jobs. There was a reasonable basis in the evidence to support the amount Dr. Summary used to "offset" his loss of earning capacity. *See Messina*, 42 S.W.3d at 765. Dr. Summary's inclusion, regardless of the term she used, of additional or "offset" income to calculate Crowder's potential post-injury earning capacity was not based on pure speculation, and the trial court did not err admitting Dr. Summary's testimony at trial.

**Pre-Injury Earning Capacity**

In its second point, Ingram argues Dr. Summary's assumption that Crowder would have advanced to a higher position within Ingram was based on "nothing but speculation." However, there was substantial evidence regarding Crowder's career prospects at Ingram. Crowder himself testified he considered his work for Ingram a career and a "calling." He had been

5

promoted from his entry level position and progressed to a senior position on the deck as a mate. His goal was to move into the wheelhouse and ultimately become a captain. The progression from a deck position into the wheelhouse required an employee to become a steersman first, then advance to pilot, and then to captain. In order to become a steersman, an employee was required to obtain a license from the Coast Guard and complete the steersman program. Crowder had begun the process to obtain his license and gain acceptance to the steersman program when he was injured, and testified it took approximately two years to advance from steersman to pilot. He believed it was Ingram's philosophy as a company to promote from within and he had no doubt he would have worked his way into the wheelhouse.

Ingram's chief legal officer (CLO) also testified regarding Ingram's culture of promoting from within. He stated if an employee takes the steps to receive the necessary licensure, he or she could work his or her way to the wheelhouse. According to the CLO, "lots of people have done it." In addition, Ingram's own vocational rehabilitation specialist testified it was unlikely had Crowder not been injured that he would have remained in the same position for the rest of his career. In fact, she agreed that because Crowder had been previously promoted it made further promotion "logical."

While there is inevitably a degree of speculation required to determine loss of earning capacity, this does not improperly influence a jury's verdict if the evidence provides a reasonable basis for the amount of loss. *See Dodson v. Ferrara*, 491 S.W.3d 542, 567 (Mo. banc 2016). The evidence provided Dr. Summary with a reasonable basis to support the additional scenarios estimating that Crowder could have advanced to steersman, pilot, or captain. She provided the jury with a reasonable basis to estimate the amount of loss in three different scenarios based on the three different positions as a result of the evidence presented. Thus, Dr. Summary's

6

testimony was admissible and any alleged weakness regarding Crowder's potential career trajectory was for the jury to consider in determining the weight to give the testimony. *Kivland*, 331 S.W.3d at 311. The trial court did not err in admitting Dr. Summary's testimony.

**Evidence of Impairment**

In points three and four on appeal, Ingram claims Dr. Summary's testimony was based on unsupported assumptions of impairment. In point three, Ingram contends this rendered Dr. Summary's testimony regarding lost earning capacity inadmissible. In point four, Ingram alleges it rendered her testimony concerning lost value of household services inadmissible.

At trial, Crowder testified that while he was certainly not claiming he was disabled as a result of his knee injury, he was no longer able to continue his job as a mate with Ingram because of the heavy physical demands of the position. In addition, he was no longer able to perform the same activities and self-employment work he had before his injury. He acknowledged he has good days and bad days. On a bad day, he experiences swelling, pain, and loss of mobility in his knee. He testified he takes between ten to fourteen ibuprofen daily, he uses an ice machine with compression, and he has tried various braces to help with the issues in his knee. Crowder testified he has more difficulty being the husband and father he wants to be and cannot complete tasks at home he used to do as a result of his physical restrictions. His wife further corroborated his testimony. She said the family had to modify how they do things around the house and on a bad day Crowder might not be able to help at home at all. She also stated the injury affected his ability to participate in various physical activities he used to do with their children.

Joshua Nadaud (Dr. Nadaud), Crowder's treating orthopedic surgeon, also testified about Crowder's condition. He diagnosed and continues to treat Crowder for a number of structural injuries to his knee which could worsen over time. He testified Crowder suffers from post-

traumatic arthritis, which can occur following an acute injury such as a fall and can affect mobility and cause significant pain. According to Dr. Nadaud, Crowder's current condition was caused by the injury he suffered at work in June 2017. He recommended Crowder limit high impact or heavy force on his knee which could cause pain or more serious injury. Dr. Nadaud reviewed the physical requirements contained in the mate job description and testified Crowder should not do a job with those requirements because he felt it was "unsafe."

There was sufficient evidence of Crowder's impairment to provide a reasonable basis for both of Dr. Summary's conclusions regarding lost earning capacity and lost value of household services as a result of his knee injury. Testimony from Crowder and Dr. Nadaud established a basis upon which Dr. Summary could conclude that Crowder's ability to work as a mate for Ingram and his ability to continue to work at the level at which he was in self-employment was impaired. In addition, Dr. Summary's conclusion regarding her use of the loss of ten hours per week of household services due to his injury was also supported by testimony from Crowder and his wife. In fact, Dr. Summary testified her use of ten hours was conservative in light of federal data which suggested a loss of twelve to fifteen hours. Again, any weakness in Dr. Summary's conclusion was for the jury to consider and assess what weight to give her opinions. *Kivland*, 331 S.W.3d at 311.

In conclusion, as to the weight of the evidence Ingram challenges in points one through four on appeal, we find Ingram extensively cross-examined Dr. Summary at trial, questioning her at length regarding the assumptions she made to arrive at her calculations. Ingram elicited testimony that she did not review any medical records or speak to any physicians, she did not speak to Crowder himself, she did not know what was required for each position upon which she based her conclusions, nor did she know how long it would take to advance to those positions.

8

She acknowledged some of the calculations may or may not actually reflect his actual earning capacity, and she conceded she had not reviewed the report from Ingram's vocational rehabilitation expert. These admissions were for the jury to consider and determine the appropriate weight to give Dr. Summary's opinions. *Id.* As a result, the trial court did not err in admitting Dr. Summary's testimony. Points one through four on appeal are denied.

**Point V**

In the fifth and final point, Ingram argues the trial court erred in denying its motion for remittitur because the verdict exceeded fair and reasonable compensation for Crowder's injury.

*Standard of Review*

"A trial court has great discretion in approving a verdict or setting it aside as excessive." *Messina*, 42 S.W.3d at 760 (internal citation omitted). A jury is primarily responsible for assessing damages; however, remittitur may be ordered where the jury errs by awarding a verdict that is simply too much in light of the evidence presented. *Id.* If, after reviewing the evidence supporting the verdict, a trial court finds the verdict is excessive because it exceeds fair and reasonable compensation for the plaintiff's injuries and damages, remittitur is appropriate. *Id.* Thus, an appellate court will interfere with the trial court's decision only if the verdict is so excessive as to shock the conscience and convince the court that both the jury and the trial court abused their discretion. *Id.*

*Analysis*

There is no precise formula to determine whether a verdict is excessive. *Id.* Instead, each case must be reviewed on its own particular facts. *Id.* A jury's award should "fairly and reasonably" compensate the plaintiff for his or her injury. *Stewart v. Partamian*, 465 S.W.3d 51, 56 (Mo. banc 2015) (internal citations omitted). In making this determination, we consider

9

several factors, including: (1) the loss of both present and future income; (2) medical expenses; (3) the plaintiff's age; (4) the nature and extent of the injuries; (5) economic considerations; (6) comparable awards in other cases; and (7) the jury and trial court's superior ability to evaluate the plaintiff's injuries and other damages. *Messina*, 42 S.W.3d at 761.

Here, there was substantial evidence to support the jury's award. Crowder suffered a significant injury to his right knee. While he admitted at trial he is not disabled as a result of his injury, the evidence established it was no longer safe for him to work as a mate due to his knee injury, and the injury impairs his ability to find subsequent and comparable employment. The jury is given great deference in determining the damages to which a party is entitled for his injury. *Veal v. Kelam*, 624 S.W.3d 172, 181 (Mo. App. E.D. 2020) (internal quotation omitted).

Furthermore, Crowder has incurred medical bills and the evidence showed he will incur additional bills. Dr. Nadaud, his treating orthopedic surgeon, testified he would require continued cortisone shots roughly every four to six months, which cost $1,335 per shot, and he would "more likely than not" require a total knee replacement, which Dr. Nadaud estimated would cost approximately $70,000. From the evidence of Crowder's limitations and symptoms resulting from his knee injury, as well as the testimony from his treating physician regarding the continuing treatment required, the jury could have reasonably reached its verdict. *See id.* at 182 (jury's verdict of $2.5 million was fair based on evidence that as a result of injury plaintiff had difficulty performing his work).

Moreover, as discussed at length above, Dr. Summary testified regarding Crowder's present and future loss of earning capacity as a result of his knee injury. Crowder was thirty-seven at the time of his injury. There was testimony from him and his wife that his continued pain and difficulty with mobility and use of his knee have prevented him from engaging in

10

activities he previously enjoyed with his family, such as hiking, running, and other recreational activities. They also testified he suffered from anxiety and depression due to his injury and the limitations imposed as a result. Based on the substantial evidence presented, including various alternative amounts for lost earnings, the jury's verdict was not excessive, but instead fair and reasonable compensation to Crowder for his injury. Thus, the trial court did not abuse its discretion in denying Ingram's motion for remittitur. Point five is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Jr., Judge and
Angela T. Quigless, Judge concur.